TODD M. BODINE AND JANET L. PACZKOWSKI, PLAINTIFFS v. HARRIS VILLAGE
PROPERTY OWNERS ASSOCIATION, INC., DEFENDANT

No. COA09-1458

(Filed 7 September 2010)

**1. Appeal and Error— partial summary judgment—interlocutory order—directed verdict—final order**

   The denial of a motion for partial summary judgment was not a final order and was not reviewed on appeal, but the subsequent directed verdict was final and the directed verdict standard of review applied.

**2. Deeds— restrictive covenants—homeowners association approval of structure**

   In a homeowners association (HOA) action that was filed after the effective date of the 2005 revisions of the Planned Community Act, the trial court did not err by granting defendant HOA a directed verdict in a declaratory judgment action with the central issue of whether the HOA had approved a structure on plaintiffs' property before construction began. There was no set of facts or circumstances under which the plaintiffs could show approval.

**3. Attorney Fees— homeowners association—violation of covenants**

   Attorney fees awarded to a homeowners association were not authorized pursuant to N.C.G.S. § 47F-3-120 because they did not involve the imposition of an assessment, the only basis for such charges in the declaration or bylaws. However, these charges were permitted by N.C.G.S. § 47F-3-102 (12) and N.C.G.S. § 47F-3-116, which permitted the imposition of fines for violations of the declarations, bylaws, rules, and regulations of the association.

   Appeal by plaintiffs from an order denying partial summary judgment entered on 5 February 2009 by Judge Edwin G. Wilson, Jr. in Iredell County Superior Court and from a corrected order entered on 22 April 2009 by Judge Mark E. Klass in Iredell County Superior Court. Heard in the Court of Appeals on 24 March 2010.

   *Eisele, Ashburn, Greene & Chapman, PA, by Douglas G. Eisele, for plaintiff appellants.*

*Forman Rossabi Black, P.A., by T. Keith Black, for defendant appellee.*

HUNTER, JR., Robert N., Judge.

Plaintiffs, Todd M. Bodine and Janet L. Paczkowski (collectively "Homeowners") built a 14 x 42 foot pool house and tiki hut (covered porch) to adjoin their home, but only received permission from the Harris Village Property Owners Association's Board of Directors ("Association") to build a 10 x 14 foot pool house. Litigation ensued, resulting in two orders denying Homeowners' claims.

Homeowners appealed both orders. Homeowners' first contention on appeal asserts that the court erred by denying summary judgment on Homeowners' declaratory judgment action, which requested that the trial court: (1) declare that the Association's restrictive covenants do not prohibit the structure that Homeowners sought to erect, and (2) declare that the attorneys' fees provision of the restrictive covenants are not applicable to enforcement of violations of the architectural provisions of the restrictive covenant. Homeowners further argue that the court erred by directing a verdict against them on the grounds that there existed credibility issues requiring jury resolution and authorization issues regarding the ability of the Board to enforce architectural restrictions which are not embodied in the filed restrictive covenants. We disagree and affirm the orders of the trial court.

## I. Jurisdiction

[1] Homeowners assert that Judge Klass's 22 April 2009 corrected order directing a verdict finally disposed of all legal issues unresolved by Judge Wilson's 5 February 2009 summary judgment order. Upon the entry of the latter order, they contend that *both* orders became "final" for purposes of invoking this Court's jurisdiction under N.C. Gen. Stat. § 7A-27(b) (2009). The Association does not contest that Judge Klass's order is a final judgment, but it contends Judge Wilson's denial of Homeowners' motion for summary judgment is not reviewable on appeal and should be dismissed. We agree with the Association on this jurisdictional issue.

"[T]he denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in trial on the merits." *Harris v. Walden,* 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Moreover, a pretrial order denying summary judgment has no

effect on a later order granting or denying a directed verdict on the same issue or issues. *See Edwards v. Northwestern Bank*, 53 N.C. App. 492, 495, 281 S.E.2d 86, 88, *disc. rev. denied*, 304 N.C. 389, 285 S.E.2d 831 (1981).

*Clinton v. Wake County Bd. of Educ.*, 108 N.C. App. 616, 621, 424 S.E.2d 691, 694 (1993).

Therefore, this Court will not review any assignments of error alleged by Homeowners that are either (1) based upon the denial of summary judgment or (2) wherein Homeowners contend that because of the denial of summary judgment, the subsequent directed verdict was improper.

To the extent the contentions made by the parties on the issues discussed in the appeals regarding summary judgment are relevant to the remaining issues regarding directed verdict, we have considered those contentions and address them herein. We, therefore, review the two remaining issues under the appropriate standard of review discussed hereinafter as those issues derive from the trial court's entry of a final order pursuant to N.C. Gen. Stat. § 7A-27(b).

## II. Facts and Procedural History

On 10 March 1999, the Niblock Development Corporation ("the Declarant") filed a Declaration of Covenants, Conditions and Restrictions for Harris Village ("CCRs") in the Iredell County Registry. The CCRs impose restrictions on the residential lots and common areas of the Harris Village Community and disclose the Declarant's intention to establish a homeowner's association ("HOA") as a means of enforcing the restrictions contained in the covenant. Articles of Incorporation for the HOA were filed on 16 March 1999, and Bylaws were adopted on 23 March 1999.

The Bylaws of the HOA provide that the affairs of the Association are to be managed by the Board of Directors. Among these powers are the powers to "exercise for the [HOA] all powers . . . vested in or delegated to the [HOA] and not reserved to the membership by other provisions of these Bylaws[.]"

Article VI of the CCRs, entitled "Architectural Control," provides for an "Architectural Committee" ("the Committee") to be appointed by the Board of Directors of the HOA following the termination of the Declarant's ownership interest in the property. The terms of the Architectural Control provisions contained within Section 4 of the

CCRs provide that "no structure shall be erected on any Lot without the approval of the Committee as provided in this section." Section 6 of this Article further provides that

> [a]fter completion of approved construction . . . no material change shall be made to any structure on a Lot without the approval of the Committee. Prior to making any material changes to any structure on a Lot, . . . the Owner shall submit to the Committee all plans and specifications covering such proposed change. The Committee shall have the absolute and exclusive right to refuse to approve the proposed plans and shall notify the Owner of its approval or disapproval within 30 (thirty) days of receipt of the plans from the Owner.

Articles V, VII, and IX of the CCRs provide an enforcement mechanism for violations of the restrictive covenants contained therein. These provisions provide that the HOA may file a lien for assessments, including reasonable attorneys' fees, and may bring suits in law and equity to enforce the provisions of the CCRs. Among the remedies allowed is the ability to enter any lot and take remedial action to cure non-conforming structures.

Article IX, Section 5 provides as follows:

> The provisions contained hereinafter in this Declaration [the CCRs] notwithstanding, nothing herein contained shall be construed so as to be in conflict with, or contrary to, those provisions of Chapter 47E [sic] of the North Carolina General Statutes, entitled the "North Carolina Planned Community Act," which are to take precedence, or be controlling, over the content of a Declaration (as defined therein).

Sometime after the CCRs were filed, the HOA's members adopted an Interpretation and Clarification of the HOA Existing Covenants, Conditions and Restrictions (hereinafter "Interpretation") which is dated 14 August 2003. Paragraph 4 of the Interpretation reads as follows:

> 4. Accessory buildings (to include tool sheds, storage or utility buildings) are to be placed no closer than 3 feet from the rear and side property lines or side street setbacks. The maximum size (area) allowed for any accessory building is 320 square feet.

This Interpretation was not registered in the county records.

Homeowners obtained lot 13 in Harris Village by a deed dated 22 August 2006, and by April of 2007 Homeowners had personally

received, and were aware of the requirements contained in, the restrictive covenants which provided that architectural committee approval was required prior to adding a structure to any lot in the subdivision.

In March 2007, Homeowners began planning an addition of a swimming pool and a covered deck to their Harris Village lot.[1] Mike Blaney ("Blaney") was then the President of the HOA and a sketch of Homeowners' plan was given to him around 16 April 2007. Thereafter, a number of modified sketches were provided to Blaney on graph paper.

The HOA has a form entitled "Architectural Requests/Approvals, which reads as follows:

> Reminder—please submit an Architectural Request form prior to commencing any work requiring Committee approval. This includes, but is not limited to, increasing width of driveways, extending walkways, play structures, decks, retaining walls, and any and all structural improvements to your property. Submit all Architectural Request forms to Mike Blaney 10 working days prior to the start date of an architectural project. A verbal approval will be given to commence work with the paperwork following shortly after. If you have any architectural questions, please call Mike[.]

Blaney delivered to the Homeowners a "Request for Architectural Approval" prior to 3 May 2007.

After giving Blaney a number of preliminary drafts of their improvements, some of which illustrated a 42 x 10 foot covered deck, Homeowners filled out the form and returned it to Blaney on 3 May 2007. Because no Architectural Committee had been appointed as provided for in the CCRs, pursuant to the Bylaws, the Board of Directors acted as the Architectural Committee. Homeowners contend that Blaney gave preliminary oral approval for Homeowners to proceed. Subsequently, without notice to Homeowners, the Board of Directors held a meeting on the night of 17 July 2007 at which Homeowners' request for approval was submitted to and considered by the HOA Board of Directors.

On 18 July 2007, a concrete company employed by Homeowners poured the concrete deck measuring 14' x 42' that would underlie the pool house (14' x 10') and the patio/deck (14' x 32') creating a structure measuring 14' x 42' (588 square feet). Later, on the morning

---

1. The construction of the swimming pool is not contested in this proceeding.

of 18 July 2007, Blaney called Homeowners to say that there was a problem and that any further concrete pouring should cease; however, at that time, all the concrete that was necessary for the project had already been poured. At the request of Homeowners, a meeting of the HOA Board of Directors was held on 18 July 2007. After that meeting, it appeared that the parties had an understanding; however, it later became apparent that no agreement had been reached. The understanding of the HOA Board of Directors is reflected in the minutes of the 18 July 2007 meeting and reads as follows:

> The Board approved the cement pad and a 10 x *14 detached pool house*. Mr. Bodine and the Board members signed the approval to be filed with the Association records. The Board encouraged Mr. Bodine to obtain a building permit for an addition to his home. The addition would be under the jurisdiction of the Town of Mooresville regulations and would not be governed by the Covenants of the Harris Village HOA, except for architectural details. The addition would have to meet all of the Town of Mooresville Requirements.

> At the conclusion of the meeting, Mr. Bodine stated that he would go to the Town of Mooresville Planning Department to obtain a permit for an addition to his home and submit paperwork to the Board prior to construction continuing on his property.

(Emphasis added.)

Homeowners subsequently filed a building permit application with the Town of Mooresville, which included a pool house measuring 10' x 42', and obtained a permit for that structure. Assuming that since the Town of Mooresville had permitted the larger structure, and therefore the HOA Board of Directors would approve the larger structure, Homeowners left on 19 July 2007 for a trip and did not return until 7 August 2007. Upon their return, Homeowners received a letter from the HOA dated 23 July 2007, asserting that Homeowners were in violation of the CCRs because the construction "appears to be a detached building more than 320 square feet instead of an addition to your home. . . . Construction of the covered porch needs to cease immediately." At the time Homeowners received the letter, the pool had been completed and the contractor had started work on the covered porch attached to the residence.

On 1 November 2007, Homeowners filed a declaratory judgment action seeking a declaration that the CCRs did not prevent them from erecting a 320-square-foot-covered porch on their residential lot in the subdivision. This complaint was subsequently amended on 12 March 2008.

On 11 January 2008, the HOA Board of Directors filed a motion to dismiss and counterclaim seeking fines, declaratory and injunctive relief, and attorneys' fees. Afterward, the HOA Board of Directors met on 11 December 2007 and found Homeowners in violation of the CCRs. Homeowners were advised that a daily fine of $100.00 would be imposed beginning 3 January 2008, and would continue until the alleged violations were remedied. When Homeowners did not respond, defendant HOA, on 15 February 2008, filed a Claim of Lien against Homeowners' property.

Following discovery, Homeowners filed a motion for summary judgment which was denied. A trial of this matter came on before Judge Mark E. Klass on 2 February 2009. At the conclusion of Homeowners' evidence, defendant HOA made a motion for directed verdict, which was denied. At the close of all evidence, Judge Klass granted a directed verdict for HOA. In his order, Judge Klass awarded attorneys' fees totaling $96,000.00 to HOA's counsel, granted the HOA liens for fines totaling $39,700.00, and ordered that the 14 x 42 foot structure be removed. The court, however, allowed Homeowners to keep their pool and the 10 x 14 foot pool house. In addition, the HOA was given permission to foreclose on the house in the event that Homeowners did not comply with the court's orders by a specified date. From this order, Homeowners filed a timely notice of appeal.

### III. Standard of Review

The standard of review on denial of a directed verdict is well established and has most recently been reiterated by our Supreme Court as follows: " 'The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury.' " *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009) (quoting *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991)). The Court further provided that "[a] directed verdict and judgment notwithstanding the verdict are therefore 'not properly allowed "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." ' " *Id.* (citations

omitted). We apply this standard of review to the question of whether the trial court erred by granting defendant HOA's motion for directed verdict at the close of all evidence.

The second and final issue on appeal is whether the trial judge had the statutory authority to impose attorneys' fees pursuant to N.C. Gen. Stat. §§ 47F-3-107.1 and -120 (2009). Issues involving statutory interpretation "are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003).

## IV. Analysis

**[2]** Our Supreme Court in *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 584 S.E.2d 731 (2003), discussed the statutory history of the Planned Community Act ("PCA") which it described as a series of statutes regulating the creation, alteration, termination, and management of planned subdivision communities. N.C. Gen. Stat. § 47F-1-101 (2009), *et seq.* Harris Village was established after 1 January 1999, the effective date of the PCA, when Niblock Development Corporation filed the CCRs in the Iredell County Registry. These CCRs established complex regulations and restrictions to which purchasers of the Harris Village lots would be subject. The CCRs specifically regulated Harris Village homeowners' decisions regarding "architectural" developments that homeowners may desire to erect on their property. The CCRs provide that an architectural committee is to be appointed by the Board of Directors. The CCRs further give that committee the right to decide, in its sole and absolute discretion, the precise site and location of any structure placed upon any lot. The central legal issue before the trial court and on appeal is whether an appropriate body or agent of the HOA approved a 10 x 42 foot structure on Homeowners' property before its construction had begun.

The philosophy of North Carolina restrictive covenant law is extensively discussed by the Supreme Court in *Wise*, 357 N.C. 396, 584 S.E.2d 731:

> As a general rule, "[r]estrictive covenants are valid so long as they do not impair the enjoyment of the estate and are not contrary to the public interest." *Karner*, 351 N.C. at 436, 527 S.E.2d at 42; *cf. Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (describing freedom of contract generally). Restrictive covenants are "legitimate tools" of developers so long as they are "clearly and narrowly

drawn." *J.T. Hobby & Son, Inc. v. Family Homes of Wake Cty., Inc.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981). The original parties to a restrictive covenant may structure the covenants, and any corresponding enforcement mechanism, in virtually any fashion they see fit. *See Runyon v. Paley*, 331 N.C. 293, 299, 416 S.E.2d 177, 182 (1992) ("an owner of land in fee has a right to sell his land subject to any restrictions he may see fit to impose"). A court will generally enforce such covenants " 'to the same extent that it would lend judicial sanction to any other valid contractual relationship.' " *Karner*, 351 N.C. at 436, 527 S.E.2d at 42 (quoting *Sheets v. Dillon*, 221 N.C. 426, 431, 20 S.E.2d 344, 347 (1942)). As with any contract, when interpreting a restrictive covenant, "the fundamental rule is that the intention of the parties governs." *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967).

*Id.* at 400-01, 584 S.E.2d at 735-36.

Therefore, under the common law, developers and lot purchasers were free to create almost any permutation of homeowners association the parties desired. Not only could the restrictive covenants themselves be structured as the parties saw fit, a homeowners association enforcing those covenants could conceivably have a wide variety of enforcement tools at its disposal.

Our Supreme Court's decision in *Wise*, interpreting the 1999 version of the Planned Community Act, required a community to specifically adopt the penalty and enforcement provisions of the Act before it could levy fines and be awarded attorneys' fees. *Wise* was subject to some academic criticism. *See* Hedrick, *Wise v. Harrington Grove Community Association, Inc.: A Pickwickian Critique*, 27 Campbell L. Rev. 139 (2005). In 2005, the General Assembly amended the Planned Community Act and reversed the ruling of *Wise* in part. Prior to 2005, in order for planned communities to come within the statutory framework of the Act, the declaration and bylaws of the community had to specifically adopt the Act's statutory benefits and scheme. After passage of section 20 of the 2005 Session Laws, the PCA's provisions applied, unless the declaration and bylaws opted out of the Act. N.C. Gen. Stat. § 47F-3-102, 2005 Sess. Laws ch. 422, § 20.

Because Harris Village was incorporated after 1999 and this action began after the effective date of the 2005 revisions of the Act, our decision in *Moss Creek Homeowners Assoc., Inc. v. Bissette*, —— N.C. App. ——, —— S.E.2d —— (filed 2 February 2010), 2010 N.C. LEXIS

446, has no application. Furthermore, the 2005 revisions to the PCA established two independent methods by which a homeowner's association could enforce its declarations—the first, by the mechanisms established in the homeowners association's declarations, and the second, by the Planned Community Act.

An examination of the recorded declarations of Harris Village reveal in Article IV that a written certificate of approval is required before a structure can be built or a material modification may be made to a dwelling in the development. The questions which Homeowners seek to have the jury resolve ignore the fact that under the legal mechanism established by the CCRs, the homeowner must make a request for approval of a new structure or a modification of an old structure and receive a certificate of approval from the appropriate board. Without this certificate of approval, the CCRs state that the homeowner may not proceed.

The other questions raised by Homeowners confuse the two methods for enforcement of the CCRs. This confusion may be understandable; however, the 2005 amendments to the PCA have clarified any confusion which may have been the result of the *Wise* decision. The architectural committee's approval of a homeowner's proposal under the CCRs and the impositions of fines under the Planned Community Act, as revised, are two distinct procedures. As to the architectural approval process, Homeowners argue that the disapproval of their request for modification was illegal since the HOA Board of Directors did not appoint an architectural committee, as required in Article VI of the CCRs. Furthermore, Homeowners contend, pursuant to the CCR's Bylaws and North Carolina statutory law, that the Board of Directors must appoint other boards, including an adjudication committee, in order to impose the fines authorized by N.C.G.S. § 47F-3-107.1, *et seq.*

With regard to Homeowners' contention, we note that they do not cite any controlling statute, case law, regulation or covenant restriction that limits the HOA Board of Directors from appointing themselves to these posts. Moreover, we think Homeowners' contention clearly ignores the Bylaws of the HOA, which allow the Board of Directors to "exercise for the [HOA] all powers, duties and authority vested in or delegated to the [HOA] and not reserved to the membership by other provisions of these Bylaws [or] the Articles of Incorporation of the [CCRs]." Without any authority to the contrary, we must agree that the Board of Directors had the authority to act for the HOA as the architectural committee and adjudication committee.

Homeowners next contend that the Board of Directors violated its statutory procedures when it imposed fines pursuant to N.C.G.S. § 47F-3-107. Specifically, Homeowners contend that Article IX, Section 5 of the CCRs—which provides that nothing in the CCRs shall be construed to be in conflict with the PCA—prohibits the Board of Directors from levying the fines imposed in this action. For this proposition, Homeowners cite *Willow Bend Homeowners Ass'n, Inc. v. Robinson,* 192 N.C. App. 405, 664 S.E.2d 570 (2008).

On this issue *Willow Bend* reads as follows:

> N.C.G.S. § 47F-3-116(e) only mandates an award of attorney's fees where the requesting party prevailed in an action "brought under this section." The type of action created by N.C.G.S. § 47F-3-116 is not one in which a homeowners' association sues on the underlying debt created by a homeowner's failure to pay an assessment. Rather, the action created by N.C.G.S. § 47F-3-116 is one in which a homeowners' association forecloses on a lien created under N.C.G.S. § 47F-3-116(a) for unpaid assessments. Plaintiff here has not sought to foreclose on a lien; rather, Plaintiff has sued on the underlying debt owed by Defendants. While N.C.G.S. § 47F-3-116(d) contemplates that a homeowners' association may bring such an action, it is not the type of action that allows the homeowners' association to collect mandatory attorney's fees under N.C.G.S. § 47F-3-116(e).

*Willow Bend,* 192 N.C. App. at 418, 664 S.E.2d at 578. Unlike the plaintiffs in *Willow Bend* who sought enforcement of the underlying debt, the HOA here has filed a claim of lien and is seeking to enforce it. Moreover, the Court in *Willow Bend* does not address the procedure for imposing a fine or assessment. That case instead merely addresses the statute which allows attorneys' fees to be assessed in a proceeding to enforce a lien, rather than addressing the underlying debt.

Finally, Homeowners argue that it is unfair for the Board of Directors to require that they comply with the architectural restrictions contained in the Interpretation of the CCRs. Homeowners contend that the Interpretation is not recorded and has not been legally adopted. We refrain from addressing this contention and do not believe it necessary for a jury to address this question, because whether the Interpretation of the architectural restrictions has been recorded is irrelevant to the central legal issues involved in this case. Here, the central issue is whether Homeowners received written

approval as required by the recorded CCRs to build the structures on their property.

After reviewing the transcript and record and applying the above-cited standard, we find no set of facts or inferences from facts under which Homeowners can show that the 10 x 42 foot structure built on their property had been approved or authorized by an appropriate agency of the HOA. Furthermore, the answers to the factual questions for which Homeowners seek a jury resolution would not produce such a document. Lacking such proof or the possibility of a jury providing an answer which would result in providing the proof legally necessary for Homeowners to prevail, we affirm the decision of the trial court in directing a verdict for defendant HOA.

## V. Attorneys' fees under the Planned Community Act

[3] The trial court's order awarded the HOA attorneys' fees based upon two statutes: N.C.G.S. § 47F-3-120 and N.C. Gen. Stat. § 47F-3-116 (2009). On appeal, Homeowners argue that the former statute, N.C.G.S. § 47F-3-120, precludes the award of attorneys' fees; but Homeowners fail to address the applicability of the latter statute in either their brief or reply brief. As such, the HOA petitions this Court to dismiss any consideration of the second issue and deem it abandoned.

N.C.G.S. § 47F-3-120 reads as follows:

Declaration limits on attorneys' fees.

Except as provided in G.S. 47F-3-116, in an action to enforce provisions of the articles of incorporation, the declaration, bylaws, or duly adopted rules or regulations, the court may award reasonable attorneys' fees to the prevailing party if recovery of attorneys' fees is allowed in the declaration.

Under this statute, the trial court's ability to award attorneys' fees is subject to provisions in the declaration or bylaws adopted by a homeowners association to assess attorneys' fees. The only provision in the CCRs pertaining to assessment of attorneys' fees appears in Article VI, and the only provision of the Bylaws pertaining to attorneys' fees appears in Article X, "Assessments." Both provisions only concern the collection of annual and special assessments. The fines and liens at issue on appeal do not involve the imposition of any assessment. Therefore, we must agree with Homeowners that the attorneys' fees in this case may not be awarded under N.C.G.S. § 47F-3-120.

However, the sole exception to the provisions of this statute is N.C.G.S. § 47F-3-116. After the *Wise* opinion, the statutory mechanism provided in § 47F-3-116 was rewritten in 2005 by the legislature so that the imposition of "fees, charges, late charges and other charges imposed pursuant to G.S. §§ 47F-3-102, 47F-3-107, 47F-3-107.1 and 47F-3-115" would be enforceable as "assessments," unless the restrictive covenants or bylaws provided to the contrary. Charges imposed under these statutes would be subject to attorneys' fees which could be collected along with the underlying debt in a "judicial foreclosure as provided in Article 29A of Chapter 1 of the General Statutes." N.C.G.S. § 47F-3-116(a1). The charges assessed in this proceeding appear to be charges permitted to be filed pursuant to N.C. Gen. Stat. § 47F-3-102(12) (2009), which permits, after reasonable notice and an opportunity to be heard, the imposition of reasonable fines "for violations of the declaration, bylaws, and rules and regulations of the association[.]" N.C.G.S. § 47F-3-107.1 provides a detailed procedure for imposing such fines. *See Willow Bend Homeowners Ass'n*, 192 N.C. App. 405, 665 S.E.2d 570.

From our review of the record, it appears that the HOA complied with the procedures set forth in N.C. Gen. Stat. § 47F-3-107.1 when it imposed the fines allowed by statute, unless the covenants provide otherwise. The HOA sent a notice of hearing to Homeowners on 25 July 2007, which contained the statutorily required warnings. The HOA Board of Directors imposed a $100 a day fine on 28 September 2007, notified the homeowners by letter, sent a letter demanding compliance and notifying them of the possibility of an added obligation of attorneys' fees, filed a claim of lien on the property, and later began a judicial foreclosure to enforce the lien. As such, we conclude that the HOA complied with the statute.

At summary judgment and on appeal, Homeowners present contentions which call into question the procedures employed by the HOA Board of Directors to disapprove the modifications to Homeowners' property. These procedures are set forth in the CCRs. For example, they argue that the HOA Board of Directors could not act as the architectural committee or, in the alternative, that the Interpretation limiting structures to 320 square feet was not a valid restriction because it was not recorded. We have previously discussed these contentions with regard to the underlying decision not to approve the addition to Homeowners' residence. These contentions are relevant here because Homeowners contend in substance that, unless the procedures contained in the CCRs for the architectural approval process are

strictly followed, a fine cannot be imposed nor attorneys' fees assessed under either § 47F-3-120 or § 47F-3-116. We disagree.

Because the 2005 revised language of this statute applies to all planned communities established after 1 January 1999, unless they opt out of the statutory scheme, any enforcement mechanism contained in the restrictive covenants is independent of the statutory procedures discussed herein. The converse is also true. The statutory procedures of N.C.G.S. § 47F-3-116 are independent from the procedures required by the restrictive covenants.

### VII. Conclusion

For the reasons set forth, we affirm the decision of the trial court directing verdict in favor of defendant HOA.

Affirmed.

Judges STEPHENS and ERVIN concur.