IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-283

Filed 17 October 2023

Gaston County, No. 21 CVS 1417

HARVEY W. GOUCH, Plaintiff,

v.

CLIFFORD ROTUNNO AND DOLORES ROTUNNO, Defendants.

Appeal by Plaintiff from an order entered 28 December 2022 by Judge Carla Archie in Gaston County Superior Court. Heard in the Court of Appeals 23 August 2023.

*Winfred R. Ervin, Jr. and Isaac Cordero, for Plaintiff-Appellant.*

*Brett E. Dressler, for Defendants-Appellees.*

WOOD, Judge.

Mr. Harvey Gouch ("Plaintiff") appeals an order granting Clifford and Dolores Rotunno's ("Defendants") motion to dismiss pursuant to Rule 12(b)(6). After careful review, we reverse the trial court's order.

## I.    Factual and Procedural Background

Defendants live in a single-family residence on a lot in the Stoney Brook Estates subdivision in Gaston County. The issue on appeal is whether Defendants' lot is subject to certain recorded covenants.

In 2007, Defendants' lot was part of a larger undeveloped tract previously

owned by Integrity Builders of NC, LLC ("Integrity"). On 15 March 2007, Integrity recorded a plat in Book 73 at page 85 of the Gaston County Public Registry, subdividing its larger tract into sixteen residential building lots. This plat designated the name of the subdivision as Stoney Brook Estates and depicted the sixteen lots as Lots 1-11, 30-34. The plat itself does not reference or refer to any type of restrictions. Defendants are the current owners of Lot 32, a property located in Stoney Brook Estates, a residential subdivision in Gaston County.

On 15 August 2008, Integrity deeded eleven of the sixteen lots in Stoney Brook Estates to Plaintiff by deed recorded in Book 4423 at Page 1654 in the Gaston County Public Registry. Because Integrity conveyed only eleven of the sixteen lots to Plaintiff, Integrity's deed to Plaintiff specifically exempts the lots not purchased, lots 6-10:

> THERE IS EXCEPTED from this conveyance Lots 6, 7, 8, 9 and 10 as shown on plat of Stoney Brook Estates, Phase 1, which map is recorded in Map Book 73 at Page 85 of the Gaston County Public Registry.

Nine years later, on 10 July 2017, Plaintiff executed and recorded in the Gaston County Register of Deeds a "Declaration of Covenants, Conditions and Restrictions for Stoney Brook Estates" ("Declaration") which purported to place restrictions on the lots in "Stoney Brook Estates." The Declaration states, "[t]he subdivision of Stoney Brook Estates is made subject to these protective covenants." However, the Declaration does not reference the lots within Stoney Brook Estates

subject to the Declaration, offer the legal description of property comprising Stoney Brook Estates or reference the 2007 plat recorded by Integrity or any other map. The Declaration includes a setback covenant, requiring all construction within Stoney Brook Estates to be built at least 110 feet from the lot's front property line and requires the front and sides of each residence be constructed of brick, stone, or a combination of both. At the time of the recording of the Declaration, Plaintiff continued to own the same eleven lots in Stoney Brook Estates which it had acquired from Integrity.

On 8 October 2019, over two years after filing the Declaration, Plaintiff sold and conveyed Lot 32 of Stoney Brook Estates to Defendants as tenants by the entirety. The deed contains a description of the land being conveyed, specifically Lot 32, references the 2007 Plat map recorded by Integrity showing Lot 32 as appearing on page 85 of Plat Book 73, and references the Plat book and page number of the deed transferring Integrity's interest to Plaintiff. The deed states, as a general warranty deed, the "Grantor will warrant and defend the title against the unlawful claims of all persons whomsoever, other than the following exceptions: Restrictions and easements of record, and the lien of 2019 ad valorem taxes." The deed, however, did not expressly reference Plaintiff's 2017 Declaration.

In 2020, Defendants constructed their home and garage within the Declaration's 110-foot setback. Additionally, the front and sides of their home were constructed with material other than brick and stone.

In a letter dated 16 November 2020, Plaintiff provided notice to Defendants of the purported violations of the Declaration and demanded Defendants bring their Lot into compliance with the Declaration. Defendants refused to make the requested changes to Lot 32. Thereafter, Plaintiff filed a summons and complaint for injunctive relief and monetary damages on 5 April 2021. On 10 June 2021, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), alleging the Declaration is not applicable to Lot 32, "did not create a North Carolina Planned Community, is not enforceable, and is not enforceable by Plaintiff."

On 18 October 2021, the trial court filed its order on Defendant's motion to dismiss, granting with prejudice Defendant's motion to dismiss pursuant to Rule 12(b)(2). The trial court's written order made no reference to Defendant's Rule 12(b)(6) motion. Plaintiff gave written notice of appeal from the trial court's order on 9 November 2021. On 4 October 2022, this Court vacated the trial court's order of dismissal and remanded the case for further proceedings based upon the discrepancy between Defendant's 12(b)(6) motion and the trial court's order based upon 12(b)(2). *Gouch v. Rotunno*, 285 N.C. App. 559, 562, 878 S.E.2d 324, 327 (2022).

On remand, Plaintiff's counsel issued a notice of hearing on Defendant's Rule 12(b)(6) motion for 26 October 2022. On 12 December 2022, Defendants filed an objection to "any judge considering Defendants' motion to dismiss other than Judge Carla Archie" which the trial court subsequently granted on 13 December 2022. On 28 December 2022, Judge Archie filed an amended order on Defendant's motion to

dismiss. The trial court clarified that the 18 October 2021 order's reference to Rule 12(b)(2) "was a scrivener's error" and that the motion to dismiss was pursuant to Rule 12(b)(6). The trial court thus granted with prejudice Defendant's motion to dismiss. Plaintiff filed a written notice of appeal on 5 January 2023.

## II. Analysis

First, Plaintiff argues the trial court erred in granting Defendants' motion to dismiss because the facts alleged in his complaint are sufficient to state a cause of action to enforce the residential restrictive covenant contained in the Declaration against Defendants. Plaintiff also contends the trial court treated Defendants' motion to dismiss as a motion for summary judgment, notwithstanding the absence of "any evidence presented by either party by way of verified pleadings, affidavits, or otherwise." We agree. The trial court erred in granting Defendants' 12(b)(6) motion to dismiss because Plaintiff's complaint sufficiently stated a cause of action upon which relief may be granted.

A trial court's order allowing a Rule 12(b)(6) motion to dismiss is reviewed *de novo. Locklear v. Lanuti,* 176 N.C. App. 380, 384, 626 S.E.2d 711, 714 (2006). The standard of review of an order allowing a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *New Bar P'ship v. Martin*, 221 N.C. App. 302, 306, 729 S.E.2d 675, 680 (2012) (citation omitted). In ruling upon a motion to dismiss, the complaint

is to be liberally construed, viewing all permissible inferences in the light most favorable to the nonmovant, "and the court should not dismiss the complaint unless it appears beyond doubt the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted). A complaint is without merit if: "(1) there is an absence of law to support a claim of the sort made; (2) there is an absence of fact sufficient to make a good claim; or (3) there is the disclosure of some fact which will defeat a claim." *Home Elec. Co. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 542, 358 S.E.2d 539, 540 (1987) (citation omitted), *aff'd*, 322 N.C. 107, 366 S.E.2d 441(1988).

While homeowners enjoy certain property rights, these rights can be limited through restrictive covenants so that homeowners are restrained from making certain use of their properties. *Hair v. Hales*, 95 N.C. App. 431, 433, 382 S.E.2d 796, 797 (1989). A restrictive covenant is defined as a "private agreement, usually in a deed or lease, that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Wal-Mart Stores, Inc. v. Ingles Markets, Inc.,* 158 N.C. App. 414, 420, 581 S.E.2d 111, 116 (2003) (citations omitted). Courts generally enforce restrictive covenants as it would any other valid contractual relationship. *Bodine v. Harris Vill. Prop. Owners Ass'n,* 207 N.C. App. 52, 60, 699 S.E.2d 129, 135 (2010) (citations omitted).

Our Supreme Court has stated, "Covenants accompanying the purchase of real

property are contracts which create private incorporeal rights, meaning non-possessory rights held by the seller, a third-party, or a group of people, to use or limit the use of the purchased property." *Armstrong v. Ledges Homeowners Ass'n*, 360 N.C. 547, 554, 633 S.E.2d 78, 85 (2006) (citations omitted). A restrictive covenant is enforceable at law if it is made in writing, properly recorded, and does not violate public policy. *Id.* at 555, 633 S.E.2d at 85 (citation omitted). While "all ambiguities will be resolved in favor of the unrestrained use of land," *J.T. Hobby & Son, Inc. v. Fam. Homes of Wake Cnty., Inc.*, 302 N.C. 64, 70, 274 S.E.2d 174, 179 (1981) (citations omitted), restrictive covenants "must be reasonably construed to give effect to the intention of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction." *Black Horse Run Prop. Owners Ass'n. v. Kaleel*, 88 N.C. App. 83, 85, 362 S.E.2d 619, 621 (1987).

Our case law has long held a restraint on a homeowner's property may not be effectively imposed except by deed or other writing duly registered in the office of the Register of Deeds. *Davis v. Robinson*, 189 N.C. 589, 601, 127 S.E.2d 697, 703 (1925). Thus, if the restrictive covenant is "contained in a separate instrument or rests in parol and not in a deed in the chain of title and is not referred to in such deed, a purchaser has no constructive notice of it and is not bound." *Hair*, 95 N.C. App. at 433, 382 S.E.2d at 797. Our law has consistently held "registration is the one and only means of giving notice of an instrument affecting title to real estate." *Massachusetts Bonding & Insurance Co. v. Knox*, 220 N.C. 725, 730, 18

S.E.2d 436, 440 (1942). Accordingly, a purchaser of real property "is not required to take notice of and examine recorded collateral instruments and documents which are not muniments of his title and are not referred to by the instruments in his chain of title." *Morehead v. Harris*, 262 N.C. 330, 340, 137 S.E.2d 174, 184 (1964).

"A purchaser is chargeable with notice of the existence of the restriction only if a proper search of the public records would have revealed it, and it is conclusively presumed he examined each recorded deed or instrument in his line of title to know its contents." *Turner v. Glenn*, 220 N.C. 620, 625, 18 S.E.2d 197, 201 (1942) (citations omitted). Therefore, a purchaser "has constructive notice of all duly recorded documents that a proper examination of the title should reveal." *Stegall v. Robinson*, 81 N.C. App. 617, 619, 344 S.E.2d 803, 804 (1986) (citations omitted). Plaintiff's assertions in his complaint, taken as true, allege Defendants had knowledge of the existence of the Declaration from both the title search they commissioned on Lot 32 and the title insurance policy purchased in association with the purchase of Lot 32, which specifically listed the Declaration as "an insured exception upon that Policy."

Defendants argue the Declaration's "restrictions do not appear in [their] chain of title because [Plaintiff] chose not to refer to the restrictions in [their] deed and chose not to add a legal description or map reference to the Declaration he filed." However, the Declaration is a recorded public record with the Gaston County Register of Deeds. Therefore, a "proper search of the public records pertaining to the subdivision would have revealed" the Declaration applying to the Stoney Brook

Estates. *Harborgate Prop. Owners Ass'n v. Mt. Lake Shores Dev. Corp.*, 145 N.C. App. 290, 294, 551 S.E.2d 207, 210 (2001). Furthermore, as Plaintiff notes, Chapter 13 of the Gaston County Unified Development Ordinance mandates that "names of new subdivisions and subdivisions roads shall not duplicate or be phonetically similar to the names of existing subdivisions and road names in Gaston County." Gaston County, N.C., Unified Development Ordinance ch. 13, § 13.13A (2023).

By controlling ordinance, there can only be one Stoney Brook Estates subdivision in Gaston County, the subdivision in question here. There is no ambiguity regarding the identification of the real property intended to be subject to the Declaration when there can be no other subdivisions with that name in Gaston County. The Declaration was made by and recorded by the owner of the lot at issue prior to the conveyance of the lot to Defendants. Thus, because the Declaration appears in Lot 32's chain of title and there are no other subdivisions titled "Stoney Brook Estates" in Gaston County, the pleadings support a reasonable inference that Defendants had constructive notice of the restrictive covenant's existence.

Defendants also contend the Declaration is unenforceable because the subdivision lots in Stoney Brook Estates are not under a uniform plan of development. According to Defendants, because Plaintiff "only owned a portion of the subdivision when the Declaration was recorded, [his] stated purpose in recording the restrictions is impossible. One-third of the subdivision remains unencumbered and unrestricted, undermining any argument that there is a common plan or

development." In making this assertion, Defendants rely upon *Reed v. Elmore* for the proposition that a restrictive covenant must be part of a general plan or scheme of development "which bears uniformly upon the area affected." 246 N.C. 221, 233, 98 S.E.2d 360, 369 (1957) (Denny, J. dissenting) (citations omitted). However, Defendants reliance on *Reed* is misplaced. *Reed* states,

> Uniformity of pattern with respect to a development furnishes evidence of the intent of the grantor to impose restrictions on all of the property and when the intent is ascertained it becomes binding on and enforceable by all immediate grantees as well as subsequent owners of any part of the property; but the fact that there is an absence of uniformity in the deeds does not prevent the owner of one lot from enforcing rights expressly conferred upon him by his contract.

*Id.* at 226, 98 S.E.2d at 364. Furthermore, "[c]ontractual relations do not disappear as circumstances change." *Id.* (citation omitted).

Here, Plaintiff was conveyed all of Integrity's interests in Stoney Brook Estates in 2008. On 10 July 2017, prior to Defendant's purchase of Lot 32, Plaintiff filed the Declaration for all remaining parcels of land in the Stoney Brook Estates. Although Plaintiff did not own five of the lots in Stoney Brook Estates, Plaintiff was permitted to impose restrictions on the eleven parcels he did own. There is no requirement he own all of the lots in Stoney Brook Estates in order to impose restrictions on the lots he does own. The restrictions imposed in the Declaration show his plan to require structures on the eleven lots he owned to have uniform and defined characteristics. We agree with Plaintiff that his decision to make "all of his interest in Stoney Brook

Estates subject to the restriction contained in the Declaration shows evidence of a general plan and scheme." Based upon this permissible inference, the pleadings suggest that a general plan and scheme was intended. Thus, the allegations in Plaintiff's complaint, taken as true, are sufficient to state a claim of enforcing the restrictive covenant against Defendant's property. *New Bar P'ship*, 221 N.C. App. at 306, 729 S.E.2d at 680 (citation omitted).

## III.    Conclusion

Because Plaintiff's complaint sufficiently stated a cause of action upon which relief may be granted, we reverse the order granting Defendants' motion to dismiss and remand to the trial court for further proceedings.

REVERSED AND REMANDED.

Judges DILLON and ZACHARY concur.