An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-476

NORTH CAROLINA COURT OF APPEALS

Filed:  31 December 2014

THE CURRITUCK CLUB PROPERTY
OWNERS ASSOCIATION, INC.,
    Plaintiff,

v.

MANCUSO DEVELOPMENT, INC.,
    Defendant.

Currituck County
No. 11-CVS-118

Appeal by plaintiff from order entered 4 March 2013 by Judge Walter H. Godwin, Jr. and judgment and orders entered 24 May 2013 and 26 September 2013 by Judge Jerry R. Tillett in Currituck County Superior Court.  Heard in the Court of Appeals 7 October 2014.

> *Hornthal, Riley, Ellis & Maland, LLP, by M. H. Hood Ellis, for plaintiff-appellant.*
>
> *Gregory E. Wills, P.C., by Gregory E. Wills, for defendant-appellee.*
>
> *Jordan Price Wall Gray Jones & Carlton, by Henry W. Jones and J. Matthew Waters, for amicus curiae Community Associations Institute-North Carolina Chapter, Inc.*

DAVIS, Judge.

The Currituck Club Property Owners Association, Inc. ("TCCPOA") appeals from (1) the denial of its motion for summary judgment; (2) the trial court's entry of judgment on the jury's verdict in favor of Defendant Mancuso Development, Inc. ("MDI"); (3) the denial of its motion for a new trial; and (4) the 26 September 2013 order awarding MDI costs and attorneys' fees. After careful review, we affirm.

**Factual Background**

TCCPOA is the homeowners' association for The Currituck Club, a residential and golfing community located in the Outer Banks in Currituck County, North Carolina. The Currituck Club community was originally owned and developed by the Currituck Associates–Residential Partnership ("CARP") and is comprised of various sub-developments, including The Hammocks, a 70-lot sub-development; Magnolia Bay, a 70-lot sub-development; Windswept Ridge, a sub-development of 30 condominium units; and The Cottages, a 23-lot sub-development.

Prior to selling any lots within The Currituck Club, CARP subjected the property to a Declaration of Covenants, Conditions and Restrictions ("the Declaration"). Article 8 of the Declaration provides that each member — defined as a record owner of a "lot" or "dwelling unit" within The Currituck Club — is responsible for paying annual assessments to TCCPOA. The

Declaration defines a "lot" as "any unimproved parcel within The Properties which is intended for use as a site for a single family detached dwelling or as a site for a patio home or zero lot line home, as shown upon any recorded subdivision map of any part of The Properties, with the exception of Common Properties or Limited Common Properties." Pursuant to the Declaration, TCCPOA is responsible for managing The Currituck Club and enforcing its covenants, including the collection of assessments from property owners.

On 8 November 2005, MDI entered into a written Agreement of Purchase and Sale ("the Purchase Agreement") with CARP to acquire 6.12 acres of property for the development of The Cottages, a new sub-development within The Currituck Club. The deed conveying the property stated that the property was subject to the restrictive covenants and reservations of record.

On 19 September 2006, the final subdivision plat for The Cottages, reflecting 23 lots, was recorded in the office of the Currituck County Register of Deeds. On 21 September 2006, the "Supplemental Declaration of Covenants, Conditions and Restrictions[:] The Currituck Club for The Cottages" ("the Supplemental Declaration") was recorded with the Currituck County Register of Deeds. The Supplemental Declaration stated that The Cottages were subject to the Declaration and made

exceptions only for "architectural control" and "restrictions on use" provisions. The Supplemental Declaration did not contain a provision exempting The Cottages from the obligation to pay assessments pursuant to the Declaration.

By letter dated 30 May 2007, Kelly Shields ("Shields"), the management agent for TCCPOA from 2003 to 2009, informed Bernie Mancuso ("Mancuso"), the president of MDI, that MDI owed assessments to TCCPOA and attached invoices for the homeowners' association assessments regarding the 16 unimproved lots MDI currently owned as of that date.[1] Upon receiving the letter and invoices from Shields, Mancuso telephoned her and informed her that it was his understanding that MDI was not obligated to pay assessments. Mancuso referred to the Purchase Agreement with CARP, specifically referencing Section 5, which provides as follows:

> Each initial third party purchaser of a Lot or Unit will be required to become a member of the Currituck Club Property Owners Association subject to all of the rights and responsibilities appurtenant thereto.[2]

---

[1] As of 30 May 2007, MDI had sold 7 of the 23 lots and the new owners of those lots were assessed directly.

[2] Shields testified at trial that with regard to other sub-developments in The Currituck Club "it was the practice that if that sub-developer owned the lot [and] had not yet built a house or sold it to a third party, that sub-developer did not pay assessments to The Currituck Club Property Owners Association. But at such time the sub-developer sold to a third party owner, that owner was responsible for starting to pay the assessments."

After their conversation, Shields informed Mike Ward ("Ward"), the then president of TCCPOA, of Mancuso's objection to paying the invoiced assessments. Ward arranged a meeting with Mancuso and Mickey Hayes ("Hayes"), the manager and attorney in fact for CARP, to resolve the matter.

At trial, Shields testified that following this meeting, Ward told her that Mancuso did not need to pay the assessments for the unimproved lots "[b]ut instead we were instructed to invoice CARP for [16 lots in] the Windswept Ridge [sub-development] that hadn't previously been invoiced." She also testified that she did not believe that CARP was required to pay assessments on these Windswept Ridge lots. Hayes stated in his deposition that CARP understood that it "didn't actually owe assessments on those lots" because the lots had not yet been recorded at the Currituck County Register of Deeds and were merely illustrated on a sketch plan.

An email dated 23 October 2007 from Shields to Nicole Etheridge, the bookkeeper responsible for preparing invoices, was introduced at trial and stated:

> Ok, I've had a moment to sort this out . . .
>
> Go ahead and void any charges to Bernie Mancuso on any cottage lot that used to be owned by him or that still is owned by him. Only charge the pro-rated fee to the owner that he sold to. We will NOT be charging

Bernie any 2008 dues, either.

Then go ahead and invoice CARP for the full year 2007 unimproved fee on lots 430-445 (16 lots). These are NOT the Historic Shooting Club Lots — he already paid for those. These are the other lots that were recently platted. Print out the 16 invoices and give to me, I'll send over to Mickey with a cover letter. We WILL bill CARP for all of their lots also in 2008.

This can be done any time before Oct 31, so that it will show on the Oct financial reports.

Thanks,

KS

The 2007 invoices to MDI regarding the assessments on the 16 lots of The Cottages were then voided, and CARP was invoiced for lots 430-445, the 16 lots in the Windswept Ridge sub-development. Evidence in the record reflects that CARP has paid assessments on lots 430-445 annually from 2007 to the date of trial in 2013.

In 2010, Barney Ottinger ("Ottinger"), who was serving as TCCPOA's president at that time, expressed concern about the operating funds of TCCPOA and sought to determine whether TCCPOA was collecting all of the assessments that it was due. Ottinger examined the Declaration, bylaws, and Supplemental Declaration and was unable to find any provisions exempting MDI from paying assessments to TCCPOA. In a letter dated 4 March 2010, counsel

for TCCPOA wrote Mancuso a letter asking if there was "any legal basis by which Mancuso Development, Inc. contends the Cottage lots are not subject to assessment by TCCPOA." TCCPOA then invoiced MDI for assessments on both The Cottages lots that were currently owned by MDI and for those lots MDI no longer owned but that had accrued assessments during the period of time before the dates of sale. When these invoices went unpaid, TCCPOA filed a claim of lien against the lots on 11 August 2010.

On 10 March 2011, TCCPOA instituted the present action by filing a verified complaint against MDI in Currituck County Superior Court (1) to collect the unpaid assessments on all of The Cottages lots in the total amount of $121,977.84; and (2) to enforce its claim of lien on The Cottages lots that MDI still owned. On 13 May 2011, MDI filed an answer and third-party complaint against CARP. The answer asserted various defenses, including accord and satisfaction, and the third-party complaint contained an assertion that "[a] key provision within all preliminary discussions was the fact that CARP would ensure that MDI would not be a member of the TCCPOA and that MDI would not be obligated to pay HOA fees on its unsold lots. Only third-party purchasers would become TCCPOA members and be obligated to pay HOA fees." MDI also claimed that Section 5 of the Purchase Agreement coupled with the subsequent dealings between MDI and

CARP reflected a recognition by CARP that MDI was not obligated to pay assessments. In its third-party claim, MDI contended "that CARP is obligated to indemnify MDI in exactly the same amount that MDI is ultimately ordered to pay TCCPOA."

CARP moved to dismiss the third-party complaint against it pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on 9 June 2011, and on 29 July 2011, the Honorable Richard L. Doughton entered an order dismissing the third-party complaint. MDI appealed from the order but then moved to withdraw the appeal, explaining that "since the filing of the Appellee's brief, Appellant has received documents and discovered facts through discovery occurring at the trial level tending to show that there is little or no likelihood that any additional monies are due to the original Plaintiffs herein stemming from the claims made in the original complaint and, therefore, very little likelihood that Appellant's claims for indemnification will need to be adjudicated." This Court dismissed the appeal by order entered 10 July 2012.

On 4 June 2012, MDI filed a motion to amend its answer so as to add the following:

> 1. That any and all payments made by [CARP] for lots 430-445 be deemed an offset for any amounts claimed due from MDI to TCCPOA for the period between 2007 and 2012.
>
> 2. That all payments by CARP for said lots

430-445 in excess of the total number of recorded lots within the subdivision as a whole, at any point in time after 2007, be deemed an offset against any amounts claimed due by TCCPOA against MDI for the period between the recording of the Plat for the Cottages Sub-development on September 21, 2006 and January 1, 2007.

3. That pursuant to N.C.G.S. 47F-3-120 that the Defendant herein be allowed to recover reasonable attorneys fees and costs incurred in defending this action in the event the fact finder determines that no amounts are due from MDI to TCCPOA as set forth in the affirmative defenses plead herein.

4. That Pursuant to N.C.G.S. 47F-1-103(4), and N.C.G.S. 47F-3-107(a), the Plaintiff herein be deemed to be without authority to make common area assessments against the Defendant as claimed herein as none of the common elements within the subdivision where [sic] leased or titled in the POA at all times relevant hereto.

The trial court granted MDI's motion to amend on 18 July 2012.

On 23 October 2012, TCCPOA filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. MDI filed a cross-motion for summary judgment on 26 October 2012. The parties' motions came on for hearing before the Honorable Walter H. Godwin, Jr. on 4 February 2013. Judge Godwin denied both parties' motions for summary judgment by order entered 4 March 2013.

A jury trial was held in Currituck County Superior Court before the Honorable Jerry R. Tillett beginning on 6 May 2013.

Shortly before the charge conference, the parties stipulated that there was an obligation to pay assessments on The Cottage lots under the Declaration.[3] The stipulation was entered outside the presence of the jury, and the jury was not informed of the stipulation.

The jury returned a verdict in favor of MDI, determining that it did not owe TCCPOA any money. Accordingly, the trial court entered a judgment on 24 May 2013 dismissing TCCPOA's complaint with prejudice and ordering the Clerk of Court to cancel the claim of lien on the MDI lots.

On 3 June 2013, TCCPOA filed a motion for a new trial, arguing that "[t]he jury verdict makes no rational sense" and that "[t]he jury was either confused or disregarded the Court's instructions." The trial court denied TCCPOA's motion by order entered 26 September 2013.

On 28 June 2013, MDI filed a motion for attorneys' fees and costs pursuant to N.C. Gen. Stat. § 47F-3-116. On 26 September 2013, the trial court entered an order directing TCCPOA to pay attorneys' fees in the amount of $120,247.50 and $3,308.00 in costs associated with MDI's defense of TCCPOA's suit. TCCPOA gave notice of appeal from the denial of summary judgment, the

---

[3] It likewise appears from the trial transcript that counsel for both parties agreed that no obligation existed under the Declaration to pay assessments on "lots that had not yet been recorded," which would encompass lots 430-445.

final judgment of the trial court, the denial of its motion for a new trial, and the order awarding attorneys' fees and costs to MDI.

## Analysis

### I. Denial of Motion for Summary Judgment

TCCPOA first argues that the trial court erred by denying its motion for summary judgment. However, it is well established that "[t]his Court cannot consider an appeal from the denial of a summary judgment motion now that a final judgment on the merits has been made." *Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 341, 658 S.E.2d 1, 3, *disc. review denied*, 362 N.C 469, 665 S.E.2d 737 (2008). We have explained that

> [t]o grant a review of the denial of the summary judgment motion after a final judgment on the merits . . . would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

*Id.* at 341, 658 S.E.2d at 3-4 (citation omitted). Consequently, we decline to address TCCPOA's argument regarding the trial

court's denial of its summary judgment motion as our prior case law prohibits us from doing so. *See Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) ("[T]he denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.").

## II. Admission of Parol Evidence at Trial

TCCPOA next argues that the trial court erred by admitting certain parol evidence concerning Section 5 of the Purchase Agreement between MDI and CARP. TCCPOA contends that the admission of this evidence was prejudicial error, requiring a new trial.

> The parol evidence rule is not a rule of evidence but of substantive law. . . . It prohibits the consideration of evidence as to anything which happened prior to or simultaneously with the making of a contract which would vary the terms of the agreement. Generally, the parol evidence rule prohibits the admission of evidence to contradict or add to the terms of a clear and unambiguous contract. Thus, it is assumed the parties signed the instrument they intended to sign, . . . and absent evidence or proof of mental incapacity, mutual mistake of the parties, undue influence, or fraud, . . . the court does not err in refusing to allow parol evidence.

*Drake v. Hance*, 195 N.C. App. 588, 591, 673 S.E.2d 411, 413 (2009) (citation and brackets omitted).

On 4 May 2013, TCCPOA filed a motion *in limine* to exclude "any and all evidence, references to evidence, testimony or

argument that Defendant ("MDI") was and is exempt from paying assessments to Plaintiff on the lots Defendant owns in The Cottages section of The Currituck Club." In this motion, TCCPOA argued that in granting CARP's Motion to Dismiss MDI's Third-Party Complaint, Judge Doughton "held the November 8, 2005 Agreement of Purchase and Sale was unambiguous, that it did not say MDI was exempt from paying assessments on lots it owned in The Cottages, and that evidence contending otherwise was inadmissible based on the parol evidence rule."

The trial court reserved ruling on TCCPOA's motion *in limine* and, during the trial, sustained TCCPOA's objections to the introduction of parol evidence that attempted to vary or contradict the written terms of the Purchase Agreement or explain the legal effect of the Purchase Agreement. The trial court did, however, allow certain evidence to come in on the subject of why CARP would voluntarily assume the responsibility to pay assessments that MDI owed, including (1) Mancuso's testimony about the meeting between himself, Ward, and Hayes after MDI was first invoiced for assessments; and (2) Hayes' deposition testimony that "the whole reason we agreed to make that payment was to . . . absolve MDI of the obligation to pay those assessments."

In determining that the admitted portions of Hayes'

testimony did not violate the parol evidence rule, the trial court reasoned that

> [t]he Parol Evidence Rule applies to transactions involving a writing wherein the parties or persons, two [2] or more have reduced a[n] . . . agreement to writing[,] then the written terms, those specifically dealt with were not allowed to be contradicted or varied by oral or other testimony.
>
> . . . . The Court interprets the testimony to be about a contract. The contract being the agreement of purchase and sale dated November 8th, 2005 and the witness purports to testify about that contract and the intent of adding Paragraph [5] in that contract.
>
> The witness's testimony, the Court determines does not purport to vary or contradict the precise written provisions of the paragraph. Therefore, on that basis and that being the only basis before the Court, the Court overrules the objection.

Indeed, contrary to TCCPOA's argument on appeal, the portions of Mancuso's and Hayes' testimony at issue did not — as TCCPOA claims in its brief — "tell the jury that Section 5 of the Agreement exempted MDI from the obligation to pay assessments on The Cottage lots." Instead, this evidence described the history, relationship, and interactions between CARP and MDI and attempted to demonstrate the motive CARP might have had to pay assessments that MDI was, in fact, otherwise responsible for paying.

Accordingly, we hold that this evidence did not violate the parol evidence rule because it did not attempt to alter or dispute the legal effect of the terms of the Purchase Agreement. *See Ingersoll v. Smith*, 184 N.C. App. 753, 755, 647 S.E.2d 141, 143 (2007) ("The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict the terms of an integrated written agreement . . . ." (citation and internal quotation marks omitted)). Therefore, TCCPOA's argument on this issue is overruled.

**III. Denial of TCCPOA's Motion for New Trial**

TCCPOA next argues that the trial court erred by denying its motion for a new trial. We disagree.

Our standard of review regarding the granting or denial of a motion for a new trial is as follows:

> Appellate review is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge. The trial court's discretion is practically unlimited. A discretionary order pursuant to . . . Rule 59 for or against a new trial upon any ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown. A manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof. An appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a

substantial miscarriage of justice. *Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (citations, quotation marks, brackets, and emphasis omitted).

The basis of TCCPOA's motion requesting a new trial is that the jury's verdict "makes no rational sense" because MDI stipulated that it was obligated to pay assessments on The Cottage lots, and the jury never reached the issue as to whether the evidence supported an accord and satisfaction. TCCPOA contends that accord and satisfaction would have been the only possible basis for its conclusion that MDI did not owe assessments to TCCPOA. The verdict sheet returned by the jury stated as follows:

> **ISSUE ONE**
>
> Does the Defendant owe the Plaintiff money on account?
>
> **ANSWER: NO**
>
> *If your answer to this Issue is "yes," proceed to Issue Two. If your answer to this Issue is "no," stop and proceed no further.*
>
> **ISSUE TWO**
>
> Is the Defendant excused from the payment by an accord and satisfaction?
>
> **ANSWER: _____**
>
> *If your answer to this Issue is "yes,"*

*proceed no further. If your answer to this Issue is "no," proceed to Issue Three.*

**ISSUE THREE**

What amount, if any, does the Defendant owe the Plaintiff on account?

**ANSWER: $_____**

As reflected on the verdict sheet, the jury instructions first charged the jury with determining whether MDI "owed [TCCPOA] money on account." The trial court elaborated on this issue by explaining to the jury as follows:

> Now, on this issue, ladies and gentlemen, the burden of proof is on the Plaintiff. That means that the Plaintiff must prove to you, by the greater weight of the evidence, that the Defendant owes annual assessments on The Cottage Lots *for which the Plaintiff has not [been] paid.*
>
> As to this issue on which the Plaintiff has the burden of proof, if you find by the greater weight of the evidence that the Defendant owes money to the Plaintiff on account for annual assessments, then it would be your duty to answer that issue, "yes" in favor of the Plaintiff.

(Emphasis added.) TCCPOA did not object to this portion of the jury instruction. In fact, TCCPOA specifically *requested* that this instruction — the pattern jury instruction for an action on an unverified account — be given.

TCCPOA argues in its brief that the portion of the instruction requesting the jury to determine whether TCCPOA had

or had not been paid for the assessments MDI was obligated to pay could not justify the jury's ultimate determination that MDI did not owe TCCPOA "money on account." This is so, TCCPOA argues, because the "payment by CARP" argument was not included in the jury instructions and was not supported by the evidence offered at trial. At oral argument in this Court, however, counsel for TCCPOA clarified that TCCPOA's argument on appeal (1) is *not* that the jury's finding could only have been legally supportable if an express instruction on MDI's "payment by CARP" defense had been given; but rather that (2) there was no rational evidence to support the jury's finding that CARP paid MDI's assessment obligations.

However, as discussed above, the jury heard evidence that (1) as soon as CARP began paying assessments on unrecorded lots as to which it was not obligated to pay such assessments, MDI's invoices were voided by TCCPOA; and (2) "the whole reason [CARP] agreed to make [these] payment[s] was . . . to absolve MDI of the obligation to pay those assessments." This evidence was sufficient to support the jury's conclusion that CARP paid assessments on behalf of MDI such that MDI did not "owe[] annual assessments on The Cottage Lots for which [TCCPOA] has not [been] paid." Therefore, we cannot conclude that the trial court's denial of TCCPOA's motion for a new trial constituted an

abuse of discretion.[4]

## IV. Award of Costs and Attorneys' Fees to MDI

TCCPOA's final argument on appeal is that the trial court erred by ordering TCCPOA to pay $120,247.50 in attorneys' fees and $3,308.00 in costs. TCCPOA contends that the trial court erred in awarding any attorneys' fees at all under N.C. Gen. Stat. § 47F-3-116 or, in the alternative, that in the event we conclude that an award of attorneys' fees was appropriate, the trial court should have apportioned the award to exclude fees stemming from the litigation of (1) MDI's third-party claim against CARP; and (2) TCCPOA's cause of action to recover on the underlying assessments owed (rather than from action taken to enforce the liens on MDI's remaining lots).

N.C. Gen. Stat. § 47F-3-116 addresses the enforcement of liens for sums due to a homeowners' association. At the time

---

[4] Amicus curiae Community Associations Institute-North Carolina Chapter, Inc. contends that "[a]n unfavorable outcome in this matter by this Court would negatively impact the significant progress made by [homeowners'] associations to make collection of assessments easier, particularly from developers and builders." Our decision in this case, however, does not stem from any sort of legal determination that MDI was exempt from paying assessments but rather from the jury's factual determination that evidence presented at trial showed CARP assumed the obligation of paying assessments on MDI's behalf. Thus, we cannot agree that the outcome of this case opens "a Pandora's box of problems for Community Associations throughout North Carolina" in the enforcement of assessments as amicus curiae asserts.

period relevant to this action, subpart (e) of N.C. Gen. Stat. § 47F-3-116 provided that a judgment in any action brought under the statute "shall include costs and reasonable attorneys' fees for the prevailing party." N.C. Gen. Stat. § 47F-3-116(e) (2011).[5] In contending that the trial court erred by awarding any attorneys' fees at all to MDI, TCCPOA relies on *Willow Bend Homeowners Ass'n, Inc. v. Robinson*, 192 N.C. App. 405, 665 S.E.2d 570 (2008). In *Willow Bend Homeowners Association*, we explained that the plaintiff homeowners' association could not recover attorneys' fees under N.C. Gen. Stat. § 47F-3-116 because it had only sought to recover unpaid assessments from a homeowner and had not brought an action seeking to *foreclose on a lien created by* the unpaid assessments. *Id.* at 418, 665 S.E.2d at 578. Thus, we concluded that the plaintiff's claim did not arise under N.C. Gen. Stat. § 47F-3-116, and as such, the plaintiff was not entitled to attorneys' fees for claims "brought under this section" (as that phrase is used in N.C. Gen. Stat. § 47F-3-116). *Id.*

Here, however, TCCPOA clearly brought claims under N.C. Gen. Stat. § 47F-3-116 as it sought to foreclose on MDI's lots

---

[5] The General Assembly subsequently amended N.C. Gen. Stat. § 47F-3-116, effective on 1 October 2013. In the current version of the statute, the language requiring that attorneys' fees and costs be awarded to the prevailing party is contained in subpart (g). *See* N.C. Gen. Stat. § 47F-3-116(g) (2013).

based on the liens created by MDI's unpaid assessments. Indeed, TCCPOA's complaint expressly references N.C. Gen. Stat. § 47F-3-116 in its second claim for relief. Accordingly, based on its status as the prevailing party in an action brought under N.C. Gen. Stat. § 47F-3-116, MDI was entitled to an award of attorneys' fees.

TCCPOA next contends that the trial court should have apportioned its award of attorneys' fees to exclude fees that did not directly stem from MDI's defense of TCCPOA's claim seeking to foreclose on the liens placed on The Cottage lots. In its order, the trial court stated that it was

> unable to determine that all costs claimed, including all attorney's fees claimed were not related to the defense of the enforcement of the claim of lien against real property. Alternatively, because of the overlap of defenses, the court cannot apportion the costs claimed, including the attorney's fees between the defense of the enforcement of the claim of lien and the defense of any of the other claims made by [TCCPOA].

TCCPOA cites no legal authority in support of its apportionment argument. Accordingly, we are unable to hold that the trial court abused its discretion on this ground, especially where the claims were all factually and legally intertwined. *See Whiteside Estates, Inc. v. Highlands Cove, L.L.C*, 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001) (explaining that where

all claims "arise from the same nucleus of operative facts and each claim was inextricably interwoven with the other claims, apportionment of fees is unnecessary" (citation and quotation marks omitted)), *appeal dismissed and disc. review denied*, 356 N.C. 315, 571 S.E.2d 219 (2002); *see also Williams v. New Hope Found., Inc.*, 192 N.C. App. 528, 530, 665 S.E.2d 586, 587 (2008) ("[T]o overturn the trial judge's determination of attorney's fees and costs, the [appellant] must show an abuse of discretion." (citation, quotation marks, and brackets omitted)); *Beard v. WakeMed*, ___ N.C. App. ___, ___, 753 S.E.2d 708, 712-13 (2014) ("The test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision. . . . [T]he reviewing court sits only to insure that the decision could, in light of the factual context in which it is made, be the product of reason."). As such, TCCPOA's argument on this issue is overruled.[6]

Finally, TCCPOA argues that the trial court abused its discretion by taxing certain costs in MDI's favor. Specifically, TCCPOA argues that several of the expenses for which costs were awarded are not authorized by N.C. Gen. Stat. §

---

[6] We similarly reject TCCPOA's contention that it was an abuse of discretion for the trial court not to exclude from its award of attorneys' fees the fees incurred in connection with MDI's third-party claim against CARP.

7A-305(d) and, therefore, are "not recoverable and were improperly included in the costs assessed against TCCPOA."

It is true that N.C. Gen. Stat. § 6-20 authorizes costs "[i]n actions where allowance of costs is not otherwise provided by the General Statutes" and limits the costs awarded to those expenses enumerated in N.C. Gen. Stat. § 7A-305(d). However, N.C. Gen. Stat. § 47F-3-116 constitutes a separate and independent statutory authorization for an award of costs in this factual context. Furthermore, unlike N.C. Gen. Stat. § 6-20, § 47F-3-116 does not contain any corresponding limitations as to costs that may be awarded thereunder.

Although the trial court's order cites N.C. Gen. Stat. § 6-20 as a basis for its award of costs, we will not find an abuse of discretion where a separate statute — N.C. Gen. Stat. § 47F-3-116 — allows for an award of costs and is devoid of the limitations on a trial court's authority that exist under § 6-20. *See Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) (explaining that order or judgment "will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered" when it is sustainable on other grounds). Moreover, we note that MDI's motion requesting attorneys' fees and costs expressly cited N.C. Gen. Stat. § 47F-3-116 as a basis for its motion. Accordingly, we conclude that

the trial court did not err in its award of costs or attorneys' fees.

## Conclusion

For the reasons stated above, we affirm.

AFFIRMED.

Judges HUNTER, Robert C., and DILLON concur.

Report per Rule 30(e).