WILLOW BEND HOMEOWNERS ASSOCIATION, INC., PLAINTIFF v. THURSTON
ROBINSON AND CHARLOTTE ROBINSON, DEFENDANTS

No. COA07-1290

(Filed 2 September 2008)

**1. Associations— homeowners association—power to impose assessment—restrictive covenants—propriety of challenge—ultra vires action**

The trial court erred by concluding as a matter of law that defendant lot owners did not challenge, by appropriate pleading, plaintiff homeowners association's power to impose the disputed assessment because: (1) while it is possible that N.C.G.S. § 55A-3-04 foreclosed defendants' argument regarding the validity of plaintiff's corporate actions, it did not prohibit defendants from challenging the underlying validity of the restrictive covenants as a matter of contract law; and (2) although homeowners in previous cases have challenged assessments by bringing injunctive actions and arguing that such assessments were ultra vires, the Court of Appeals has also previously allowed parties to assert a defensive challenge to the validity of assessment-related restrictive covenants without bringing a separate ultra vires action.

**2. Associations— homeowners association—power to impose assessment—welfare covenant—assessment of attorney fees—nonmaintenance expenditure**

The trial court did not err by concluding as an alternative basis for judgment in plaintiff homeowners association's favor that a restrictive covenant allowing plaintiff to levy assessments "to promote the . . . welfare of residents" was not vague as to the right of plaintiff to assess attorney fees against its members which are incurred by plaintiff in defending itself and its members against claims brought against plaintiff because: (1) although defendants contend the covenant failed the three-part test set out in *Allen*, 119 N.C. App. 761 (1995), that test was inapplicable since plaintiff levied an assessment for a nonmaintenance expenditure instead of for property maintenance; (2) the general standard is that covenants imposing affirmative obligations on the grantee must contain some ascertainable standard by which the court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall

within the contemplation of the covenant; (3) the parties agreed that the covenant contemplated assessments for payment of court judgments, and thus, it follows that it surely contemplated assessments for the employment of legal counsel to defend such judgments; (4) an assessment for legal fees under the "welfare" covenant was foreseeable by the parties at the time that defendants purchased their lot in the subdivision; and (5) the covenant contained an ascertainable standard since defendants did not argue that the amount of the assessment was greater than the expense plaintiff incurred in securing legal representation, nor that they were assessed more than their pro rata share of plaintiff's legal costs.

**3. Associations— homeowners association—attorney fees— recovery of assessment**

The trial court did not err by entering judgment for plaintiff homeowners association to recover an assessment for attorney fees even though defendants contend plaintiff was not entitled to recover attorney fees absent statutory authority because: (1) contrary to defendants' assertion, plaintiff was not seeking to recover attorney fees it previously incurred in defending against defendants' *prior discrimination claims*, but instead was seeking to recover a valid assessment that it levied against defendants; and (2) the fact that this assessment will be used to pay attorney fees incurred in prior administrative proceedings does not preclude plaintiff's claim under the rule cited in *Washington*, 132 N.C. App. 347 (1999).

**4. Associations; Costs— denial of attorney fees—good faith argument**

The trial court did not abuse its discretion by denying plaintiff homeowners association's motion for attorney fees under N.C.G.S. § 6-21.5 because: (1) defendants raised an appropriate challenge to the validity of the pertinent restrictive covenant; and (2) defendants made a good faith argument regarding the invalidity of the restrictive covenant even though the argument was not meritorious.

**5. Associations; Costs— mandatory attorney fees—lien for assessments**

The trial court did not err by denying plaintiff homeowners association's motion for attorney fees under the liens for assessments section of the North Carolina Planned Community

Act (PCA) in N.C.G.S. § 47F-3-116(e) because: (1) N.C.G.S. § 47F-3-116(e) only mandates an award of attorney fees where the requesting party prevailed in an action brought under this section; (2) the type of action created by this statute is not one in which a homeowners association sues on the underlying debt created by a homeowner's failure to pay an assessment, but instead the action created is one in which a homeowners association forecloses on a lien created under N.C.G.S. § 47F-3-116(a) for unpaid assessments; (3) in the instant case plaintiff has not sought to foreclose on a lien, but instead sued on the underlying debt owed by defendants; and (4) while the statute contemplates that a homeowners association may bring such an action, it is not the type of action that allows the collection of mandatory attorney fees.

Appeal by Defendants from order entered 24 April 2007 by Judge Kimbrell Kelly Tucker in District Court, Cumberland County, and appeal by Plaintiff and Defendants from order entered 25 May 2007 by Judge John W. Dickson in District Court, Cumberland County. Heard in the Court of Appeals 19 March 2008.

*Ronald E. Winfrey for Plaintiff.*

*Newman & Newman, PLLC, by James T. Newman, Jr. and Ryann W. Angle, for Defendants.*

McGEE, Judge.

The record in this case shows that the Willow Bend Subdivision is a small neighborhood located in Cumberland County, North Carolina, and that it consists of eight separate lots. The Willow Bend Homeowners Association, Inc. (Plaintiff) is a nonprofit corporation incorporated on or about 26 February 1997. The Willow Bend Architectural Review Committee (ARC) is an unincorporated association that was established to approve proposed building plans in the Willow Bend Subdivision.

The developer of the Willow Bend Subdivision filed a "Declaration of Covenants[,] Conditions and Restrictions for Willow Bend Subdivision" (the Declaration) with the Cumberland County Register of Deeds on 25 June 1998. Article IV of the Declaration provides in part:

*Section 1. . . . Personal Obligation of Assessment. . . .* [E]ach Owner of any Lot by acceptance of a deed therefor, whether or

not it shall be so expressed in such deed, is deemed to covenant and agree to pay the [Willow Bend Homeowners] Association:

(1)  annual assessments or charges[.]

. . . .

*Section 2. Purpose of Assessments.* The assessments levied by the [Willow Bend Homeowners] Association shall be used exclusively to promote the recreation, health, safety, and welfare of the residents in the properties and for the improvements and maintenance of the Common Area.

*Section 3. Maximum Annual Assessment.* . . . [T]he annual maximum assessment shall be Five Hundred and No/100 ($500.00) Dollars per Lot.

. . . .

(b) . . . [T]he annual maximum assessment may be increased . . . by a vote of three-fourths (3/4) of each class of members who are voting in person or by proxy, at a meeting duly called for this purpose.

Thurston and Charlotte Robinson (Defendants) purchased a lot in the Willow Bend Subdivision in June 2003. Defendants submitted a proposed building plan for a single-family residence to the ARC in January 2005. The ARC denied approval of Defendants' building plan because the plan did not comply with setback requirements contained in the Declaration.

After numerous unsuccessful attempts at amending the setback requirements, Defendants, who are African-American, filed a complaint against Plaintiff with the Fayetteville Human Relations Commission (FHRC) alleging that Plaintiff had discriminated against them on the basis of their race. Defendants also filed discrimination charges against Plaintiff with the Department of Housing and Urban Development, which referred the charges to the North Carolina Human Relations Commission (NCHRC). The FHRC found on 14 April 2005 that Plaintiff had not discriminated against Defendants. The outcome of Defendants' complaint with the NCHRC is not clear from the record.[1] Plaintiff retained counsel to defend itself in the pro-

---

1. In a 16 June 2006 letter from Plaintiff's counsel to Defendants, Plaintiff's counsel states that the NCHRC "dismissed [Defendants'] charges with a determination that no reasonable grounds existed to believe [Plaintiff] or its officers had committed an unlawful discriminatory housing practice against [Defendants]." In subsequent filings

ceedings before the FHRC and NCHRC. As of 31 December 2005, Plaintiff had a bank balance of $153.40 and outstanding legal bills totaling $4,331.99.

Plaintiff held a meeting on 1 January 2006 and voted seven-to-one to increase the 2006 annual assessment from $500.00 to $1,000.00 per lot to cover Plaintiff's outstanding legal bills. Defendants were the sole members of the Willow Bend Homeowners Association to vote against the assessment. Over the following months, Defendants informed Plaintiff that they "exclud[ed themselves] from the group who wishe[d] to support [Plaintiff] financially" in defending itself. Defendants also made numerous attempts to pay Plaintiff $500.00 to cover the original 2006 assessment. On each occasion, Plaintiff refused to accept Defendants' $500.00 payment and asked Defendants to pay the full $1,000.00 assessment.

Plaintiff filed a small claim complaint against Defendants on 25 September 2006 to recover the $1,000.00 assessment, plus interest and attorney's fees. A judgment was entered on 19 October 2006 in Plaintiff's favor, but the judgment did not award Plaintiff attorney's fees. Defendants appealed the judgment to District Court, and Plaintiff appealed the denial of attorney's fees to District Court. Defendants filed a motion for leave to assert an answer, defenses, counterclaims, and third-party complaints in District Court on 24 January 2007. The District Court issued an order on 14 February 2007 allowing Defendants to assert defenses but denying the remainder of Defendants' motion. Defendants then filed a general denial of the allegations in Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 8(b).

Plaintiff and Defendants filed opposing motions for summary judgment on 15 and 21 March 2007, respectively. District Court Judge Kimbrell Kelly Tucker (Judge Tucker) issued an order on 24 April 2007 denying both parties' motions. This action was tried before District Court Judge John W. Dickson (Judge Dickson) on 24 April 2007. Judge Dickson determined that there were no material facts in dispute and that this action could be decided as a matter of law. Both parties agreed that Judge Dickson could decide the relevant issues as a matter of law without overruling Judge Tucker's prior order.

As to the merits of Plaintiff's claim, Defendants acknowledged the $1,000.00 assessment but argued that the restrictive covenants

---

with the trial court, however, Defendants state that the NCHRC in fact issued a right-to-sue letter to Defendants in response to Defendants' complaint.

purporting to allow Plaintiff to impose the assessment were vague and unenforceable. Plaintiff responded that the assessment was proper and that the restrictive covenants were valid. Plaintiff further noted that under N.C. Gen. Stat. § 55A-3-04, Defendants were required to challenge the validity of corporate action through an injunctive proceeding. According to Plaintiff, Defendants had not challenged Plaintiff's action by an appropriate pleading, and therefore were unable to raise their argument concerning the covenants as a defense in the current case. Plaintiff also argued that it was entitled to attorney's fees under N.C. Gen. Stat. § 6-21.5 and N.C. Gen. Stat. § 47F-3-116(e).

Judge Dickson entered an order on 25 May 2007 containing two conclusions of law that served as alternative bases for awarding judgment in Plaintiff's favor:

1. [D]efendants did not challenge, by appropriate pleading, the power of [Plaintiff] to make the disputed assessment.

2. The Declaration . . . is not vague as to the right of [Plaintiff] to assess attorney's fees, against its members, which are incurred by [Plaintiff] in defending itself and its members against claims brought against [Plaintiff].

Judge Dickson awarded Plaintiff $1,000.00, plus interest, on its claim for the past-due assessment. However, Judge Dickson denied Plaintiff's requests for attorney's fees under N.C. Gen. Stat. § 6-21.5 and N.C. Gen. Stat. § 47F-3-116(e). Plaintiff and Defendants appeal.

## I. Defendants' Appeal

Defendants raise three issues in their appeal. We consider each of Defendants' arguments in turn.

### A.

[1] Defendants first argue that the trial court erred by concluding as a matter of law that Defendants did not challenge, by appropriate pleading, Plaintiff's power to impose the disputed assessment. We review a trial court's legal conclusions *de novo. See, e.g., Bruning & Federle Mfg. Co. v. Mills,* 185 N.C. App. 153, 156, 647 S.E.2d 672, 674, *cert. denied,* 362 N.C. 86, 655 S.E.2d 837 (2007).

The North Carolina Nonprofit Corporation Act provides in part:

(a) Except as provided in subsection (b) of this section, the validity of corporate action shall not be challenged on the ground that the corporation lacks or lacked power to act.

(b) A corporation's power to act may be challenged:

> (1) In a proceeding by a member or a director against the corporation to enjoin the act[.]

N.C. Gen. Stat. § 55A-3-04(a)-(b)(1) (2007). Defendants argue that N.C.G.S. § 55A-3-04 is inapplicable in the current case. According to Defendants, their argument is not that Plaintiff acted *ultra vires* in derogation of corporate by-laws, resolutions, or other corporate documents. Rather, Defendants merely challenge the validity and enforceability of the restrictive covenants at issue. Plaintiff responds that the crux of Defendants' trial defense was that Plaintiff lacked the power to impose the assessment at issue. Therefore, according to Plaintiff, N.C.G.S. § 55A-3-04 required Defendants to enjoin Plaintiff's action through a compulsory counterclaim, which Defendants did not do.

We agree with Defendants' contentions. Defendants did argue at trial that Plaintiff lacked the power to impose the assessment at issue, but they also argued that the restrictive covenants under which Plaintiff imposed the assessment were invalid and unenforceable. While it is possible that N.C.G.S. § 55A-3-04 foreclosed Defendants' former argument regarding the validity of Plaintiff's corporate actions, it did not prohibit Defendants from challenging the underlying validity of the restrictive covenants as a matter of contract law.

It is true that homeowners in previous cases have challenged assessments by bringing injunctive actions and arguing that such assessments were *ultra vires. See, e.g., Parker v. Figure "8" Beach Homeowners' Ass'n,* 170 N.C. App. 145, 146, 611 S.E.2d 874, 874 (2005). However, this Court has also previously allowed parties to assert a defensive challenge to the validity of assessment-related restrictive covenants without bringing a separate *ultra vires* action. In *Beech Mountain Property Owner's Assoc. v. Seifart,* 48 N.C. App. 286, 269 S.E.2d 178 (1980), for example, the plaintiff homeowners' association sued to recover unpaid assessments owed by the defendant property owners. *Id.* at 287, 269 S.E.2d at 179. The defendants did not attempt to enjoin the plaintiff from imposing the assessments, but rather filed a motion for summary judgment arguing that the covenants upon which the plaintiff relied in assessing the defendants were unenforceable. *Id.* at 294, 269 S.E.2d at 182. The trial court granted the defendants' motion, and our Court affirmed the trial court's decision. *Id.* at 297, 269 S.E.2d at 184. *See also, e.g., Figure Eight Beach Homeowners' Association v. Parker,* 62 N.C. App. 367,

367, 303 S.E.2d 336, 337, *disc. review denied,* 309 N.C. 320, 307 S.E.2d 170 (1983) (where the plaintiff homeowners' association sued for unpaid assessments, the defendant homeowners filed a motion for summary judgment contesting the validity of the assessment covenants); *Snug Harbor Property Owners Assoc. v. Curran,* 55 N.C. App. 199, 200, 284 S.E.2d 752, 753 (1981), *disc. review denied,* 305 N.C. 302, 291 S.E.2d 151 (1982) (where the plaintiff homeowners' association sued for unpaid assessments, the defendant homeowners filed a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that the assessment covenants were invalid).

We therefore hold that the trial court erred by concluding, as one basis supporting judgment in Plaintiff's favor, that Defendants had not challenged by appropriate pleading Plaintiff's power to impose the disputed assessment.

### B.

[2] Defendants next argue that the trial court erred by concluding as an alternative basis for judgment in Plaintiff's favor that the restrictive covenants contained in the Declaration are "not vague as to the right of [Plaintiff] to assess attorney fees, against its members, which are incurred by [Plaintiff] in defending itself and its members against claims brought against [Plaintiff]."[2] We review the trial court's legal conclusions *de novo. Mills,* 185 N.C. App. at 156, 647 S.E.2d at 674.

Our Court has previously stated that covenants imposing affirmative obligations on a grantee must contain "some ascertainable standard . . . by which the court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant." *Seifart,* 48 N.C. App. at 295, 269 S.E.2d at 183. For example, "a covenant which purports to bind the grantee of land to pay future assessments in whatever amount to be used for whatever purpose the assessing entity might from time to time deem desirable would fail to provide the court with a sufficient standard." *Id.* Defendants argue that the covenant allowing Plaintiff to levy assessments "to promote the . . . welfare of residents" allows Plaintiff to levy assessments for any amount and for any purpose, and is therefore vague and unenforceable.

---

2. Defendants also assign error to Judge Tucker's 24 April 2007 order denying Defendants' motion for summary judgment as to the validity of the restrictive covenants. Our Court will not review a denial of summary judgment where the trial court has issued a final judgment on the merits. *WRI/Raleigh, L.P. v. Shaikh,* 183 N.C. App. 249, 252, 644 S.E.2d 245, 246-47 (2007).

In support of their argument, Defendants point to a series of cases in which our Court has held that a covenant was too vague to support a maintenance assessment imposed by a homeowners' association. In *Allen v. Sea Gate Ass'n*, 119 N.C. App. 761, 460 S.E.2d 197 (1995), for example, our Court examined a restrictive covenant requiring homeowners to pay a sixty-dollar annual assessment "for the maintenance, upkeep and operations of the various areas and facilities by [the homeowners' association.]" *Id.* at 764, 460 S.E.2d at 199-200. Our Court applied a three-part test to determine the validity of the covenant:

> Assessment provisions in restrictive covenants (1) must contain a " 'sufficient standard by which to measure . . . liability for assessments,' " . . . (2) "must identify with particularity the property to be maintained," and (3) "must provide guidance to a reviewing court as to which facilities and properties the . .·. association . . . chooses to maintain.

*Id.* at 764, 460 S.E.2d at 199 (quoting *Figure Eight*, 62 N.C. App. at 376, 303 S.E.2d at 341 (citation omitted)). Because the covenant did not name any particular properties to be maintained and did not contain a standard by which our Court could assess how the homeowners' association chose which properties to maintain, our Court held that the assessment covenant was unenforceable. *Id.* at 764-65, 460 S.E.2d at 200. *See also Snug Harbor*, 55 N.C. App. at 203-04, 284 S.E.2d at 755 (holding invalid a covenant providing that assessments would be used for "[m]aintenance and improvement of [the neighborhood] and its appearance, sanitation, easements, recreation areas and parks"); *Seifart*, 48 N.C. App. at 288, 295-97, 269 S.E.2d at 179, 183-84 (holding invalid covenants establishing, *inter alia*, "reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas").

Defendants argue that the covenant in the present case fails the three-part test set out in *Allen* because it does not specifically enumerate the various types of expenditures for which Plaintiff may levy assessments to promote the welfare of its members. While we agree that the test used in *Allen, Snug Harbor*, and *Seifart* required a clear level of specificity, we note that each of those cases involved covenants allowing assessments for maintenance of physical property. Indeed, the test itself references the "property" and "facilities" to be maintained. If Plaintiff in the present case had levied an assessment for property maintenance pursuant to the "welfare" covenant,

we would apply the *Allen* test to determine the validity of the covenant with respect to that assessment. However, Plaintiff here levied an assessment for a non-maintenance expenditure. By its own terms, the *Allen* test is inapplicable to the facts of the present case. Rather, we evaluate the covenant at issue according to the general standard that covenants imposing affirmative obligations on the grantee must contain "some ascertainable standard . . . by which the court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant." *Seifart*, 48 N.C. App. at 295, 269 S.E.2d at 183.

We first determine whether the purpose of the assessment falls within the contemplation of the covenant. The covenant allows Plaintiff to levy assessments "to promote the . . . welfare of residents" in the Willow Bend Subdivision. We acknowledge that a covenant allowing assessments for the "welfare" of neighborhood residents may be vague and unenforceable with respect to many types of assessments. In the current case, however, we determine only whether the covenant contemplates an assessment levied to cover legal costs incurred by Plaintiff in defending itself and its members in a lawsuit or administrative proceeding.

In North Carolina, a nonprofit corporation generally must be represented by a licensed attorney and cannot represent itself in a legal proceeding. *See Lexis-Nexis v. Travishan Corp.*, 155 N.C. App. 205, 207-09, 573 S.E.2d 547, 549 (2002). If a homeowners' association were unable to employ an attorney to defend against outside claims, the association and its members could face significant monetary liability. Defendants admitted at the summary judgment hearing before Judge Tucker that Plaintiff could levy an assessment against its members to pay a court judgment. Such an assessment would clearly serve the "welfare" of the association members. *Cf. Ocean Trail Unit Owners Ass'n v. Mead*, 650 So. 2d 4, 7 (Fla. 1994) (noting that "[i]f assessments cannot be enforced to pay judgments which have been entered against [a condominium] association and which can be executed against the association property, the condominium could be destroyed, to the detriment of all the owners"). If the covenant at issue contemplates assessments for the payment of court judgments, it surely contemplates assessments for the employment of legal counsel to defend against such judgments in the first instance.

Further, we note that an assessment for legal fees pursuant to the "welfare" covenant was clearly foreseeable by the parties at the

time that Defendants purchased their lot in the Willow Bend Subdivision. Under the North Carolina Nonprofit Corporation Act, which was enacted prior to 2003, Plaintiff has the power "to do all things necessary or convenient to carry out its affairs," including the power "[t]o sue and be sued, [and] complain and defend in its corporate name[.]" N.C. Gen. Stat. § 55A-3-02(a)(1) (2007). We must presume that Defendants, at the time they purchased their lot, were aware of Plaintiff's ability to defend itself. *See Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 406, 584 S.E.2d 731, 739, *reh'g denied*, 357 N.C. 582, 588 S.E.2d 891 (2003) (noting that "[a] real estate covenant is a contract, and parties are generally presumed to take into account all existing laws when entering into a contract"). We also must presume that Defendants were aware that Plaintiff would be required to employ and pay legal counsel in the event it needed to defend itself. *See Lexis-Nexis*, 155 N.C. App. at 207-09, 573 S.E.2d at 549. Therefore, Defendants could have foreseen that if Plaintiff ever incurred legal fees in its own defense, it would levy a reasonable assessment to pay these fees "to promote the welfare . . . of the residents" of the Willow Bend Subdivision.

We next determine whether there is an ascertainable standard by which our Court can objectively determine that the amount of the assessment fell within the contemplation of the covenant. We find that such a standard does exist. Specifically, we find that when Plaintiff employed an attorney to defend itself, the amount of the assessment contemplated by the covenant at issue was the cost incurred by Plaintiff in securing legal representation. Further, Defendants do not argue that the amount of the assessment was greater than the expense Plaintiff incurred in securing legal representation, nor do Defendants argue that they were assessed more than their *pro rata* share of Plaintiff's legal costs.

Based on the above, we hold that the covenant at issue contains an "ascertainable standard . . . by which [our] [C]ourt can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant." *Seifart*, 48 N.C. App. at 295, 269 S.E.2d at 183. We further hold that both the purpose and amount of the assessment do in fact fall within the contemplation of the covenant. Therefore, the "welfare" covenant is not vague with respect to the specific assessment at issue, and is enforceable against Defendants.

Defendants contend that this holding would give homeowners' associations "unlimited discretion to rely upon vague covenants to

assess property owners any amount [they] choose[] and for whatever reason [they] desire[]." Defendants' concerns are unfounded. We do not hold that covenants allowing homeowners' associations to levy non-maintenance assessments for the "welfare" of their members are sufficiently definite to support any and all assessments, no matter their purpose or amount. We hold only that in this case, the covenant at issue is not vague as to Plaintiff's ability to levy an assessment for the costs of defending itself and its members against claims brought against Plaintiff. The trial court did not err in reaching the same limited conclusion as an alternative basis for judgment in Plaintiff's favor. Defendants' assignment of error is overruled.

C.

[3] Finally, Defendants argue that the trial court erred in entering judgment for Plaintiff even though Plaintiff was not entitled to recover attorney's fees absent statutory authority permitting such recovery. Defendants note that "[a]s a general rule, in the absence of some contractual obligation or statutory authority, attorney fees may not be recovered by the successful litigant as damages or a part of the court costs." *Washington v. Horton*, 132 N.C. App. 347, 349, 513 S.E.2d 331, 333 (1999). According to Defendants, Plaintiff is seeking to recover attorney's fees it incurred in defending against Defendants' prior discrimination claims, but has cited no contractual obligation or statutory authority permitting such recovery. Therefore, Defendants contend, Plaintiff is unable to recover on its claim.

Defendants' argument is without merit. Plaintiff is not seeking to recover the attorney's fees it previously incurred in defending against Defendants' prior discrimination claims. Rather, Plaintiff is seeking to recover a valid assessment that it levied against Defendants. The fact that this assessment will be used to pay attorney's fees incurred in prior administrative proceedings does not preclude Plaintiff's claim under the rule cited in *Washington*. Defendants' assignment of error is overruled.

## II. Plaintiff's Appeal

Plaintiff raises two issues in its appeal. We consider each of Plaintiff's arguments in turn.

A.

[4] Plaintiff first argues that the trial court erred by denying Plaintiff's motion for attorney's fees under N.C. Gen. Stat. § 6-21.5. This statute provides:

In any civil action . . . the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading. . . . A party who advances a claim or defense supported by a good faith argument for an extension, modification, or reversal of law may not be required under this section to pay attorney's fees.

N.C. Gen. Stat. § 6-21.5 (2007). Where attorney's fees are available under N.C.G.S. § 6-21.5, we review the trial court's denial of attorney's fees for abuse of discretion. *Cf. Phillips v. Warren*, 152 N.C. App. 619, 629, 568 S.E.2d 230, 236-37 (2002), *disc. review denied*, 356 N.C. 676, 577 S.E.2d 633 (2003) (setting the standard of review for a trial court's decision to award attorney's fees under N.C. Gen. Stat. § 6-21.1).

Plaintiff argues that attorney's fees were available and appropriate under N.C.G.S. § 6-21.5 because Defendants did not raise any justiciable issue of law or fact in this case. We disagree. As discussed above, Defendants raised an appropriate challenge to the validity of the restrictive covenant at issue. Further, we find that Defendants made a good-faith argument regarding the invalidity of the restrictive covenants, even though Defendants' argument was not meritorious. Because Defendants presented a justiciable issue in this case, Plaintiff was unable to recover attorney's fees pursuant to N.C.G.S. § 6-21.5. The trial court therefore did not abuse its discretion by declining to award Plaintiff attorney's fees under N.C.G.S. § 6-21.5. Plaintiff's assignment of error is overruled.

B.

[5] Plaintiff next argues that the trial court erred by denying Plaintiff's motion for attorney's fees under N.C. Gen. Stat. § 47F-3-116(e). This statute, which is part of the North Carolina Planned Community Act (PCA), is titled "Lien for assessments" and provides in part:

(a) Any assessment levied against a lot remaining unpaid for a period of 30 days or longer shall constitute a lien on that lot . . . . [T]he [homeowners'] association may foreclose the claim of lien in like manner as a mortgage on real estate under power of sale[.]

. . . .

(d) This section does not prohibit other actions to recover the sums for which subsection (a) of this section creates a lien[.]

(e) A judgment, decree, or order in any action brought under this section shall include costs and reasonable attorneys' fees for the prevailing party.

N.C. Gen. Stat. § 47F-3-116(e) (2007). We review a trial court's decision whether to award mandatory attorney's fees *de novo*. *Cf. Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989) (stating that a "trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue").

We first note that the PCA generally applies only to planned communities created after 1 January 1999. *See* N.C. Gen. Stat. § 47F-1-102(a) (2007). However, certain portions of the PCA are retroactive and apply to pre-1999 planned communities unless a planned community's declaration or articles of incorporation expressly state otherwise. *See* N.C. Gen. Stat. § 47F-1-102(c) (2007). N.C.G.S. § 47F-3-116 is among the provisions made retroactive by N.C.G.S. § 47F-1-102(c), and the Declaration of the Willow Bend Subdivision does not provide otherwise. Therefore, N.C.G.S. § 47F-3-116 applies to the Willow Bend Subdivision.

Plaintiff argues that because it was the prevailing party in an action to recover an assessment, N.C.G.S. § 47F-3-116(e) required the trial court to award Plaintiff reasonable attorney's fees. We disagree. N.C.G.S. § 47F-3-116(e) only mandates an award of attorney's fees where the requesting party prevailed in an action "brought under this section." The type of action created by N.C.G.S. § 47F-3-116 is not one in which a homeowners' association sues on the underlying debt created by a homeowner's failure to pay an assessment. Rather, the action created by N.C.G.S. § 47F-3-116 is one in which a homeowners' association forecloses on a lien created under N.C.G.S. § 47F-3-116(a) for unpaid assessments. Plaintiff here has not sought to foreclose on a lien; rather, Plaintiff has sued on the underlying debt owed by Defendants. While N.C.G.S. § 47F-3-116(d) contemplates that a homeowners' association may bring such an action, it is not the type of action that allows the homeowners' association to collect mandatory attorney's fees under N.C.G.S. § 47F-3-116(e). We therefore hold that the trial court did not err by denying Plaintiff's request for attorney's fees under N.C.G.S. § 47F-3-116(e). Plaintiff's assignment of error is overruled.

**FAYETTEVILLE PUBL'G CO. v. ADVANCED INTERNET TECHS., INC.**

[192 N.C. App. 419 (2008)]

In Defendants' appeal we affirm.

In Plaintiff's appeal we affirm.

Judges TYSON and STEPHENS concur.