COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Athey, Friedman and Lorish
Argued at Salem, Virginia


TERRACE VIEW PROPERTY
 OWNER'S ASSOCIATION, INC.

v.      Record No. 2007-24-3

SHEKAR JANNAH, ET AL.

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
FEBRUARY 3, 2026


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Joseph M. Rainsbury (H. Robert Yates; O'Hagan Meyer, PLLC, on
briefs), for appellant.

Andrew P. Connors (Jacob P. East; Darkhorse Law PLLC, on brief),
for appellees.


On November 8, 2024, the Circuit Court of Bedford County ("circuit court") entered a

final order granting Shekar and Barbara Jannah's (collectively, the "Jannahs") motion for

summary judgment in their declaratory judgment action against Terrace View Property Owner's

Association, Inc. ("Terrace View"). On appeal, Terrace View assigns error to the circuit court

for entering summary judgment based upon: 1) the circuit court determining that Terrace View

was not a valid property owners' association ("POA") pursuant to the Virginia Property Owners

Association Act ("POAA"); 2) the circuit court ruling that Terrace View "could not levy

assessments or enforce any other covenants against the owners"; and 3) the circuit court failing

to address Terrace View's equitable affirmative defenses of waiver, estoppel, and unclean hands.

Finding no error, we affirm.

## I. BACKGROUND[1]

The Terrace View Subdivision ("Subdivision"), located in Forest, Virginia, was originally developed in 2000 by Terrace View Corporation ("Developer"). When the Subdivision was created, the Developer adopted a declaration of protective covenants ("Declaration"), which was recorded among the land records located in the Bedford County Circuit Court Clerk's Office. Section 9 of the Declaration, in relevant part, authorized the optional and subsequent creation of Terrace View, giving the Developers the right "to transfer all common areas, common amenities or other property within the development to" Terrace View. Section 9 further provided that Terrace View "shall have the right to establish and collect assessments, and by accepting ownership in the subdivision each Lot owner(s) shall be deemed to have agreed to pay same when and as due."

In 2005, the Developer incorporated Terrace View. Terrace View remained "inactive" until 2014, when the corporation "registered with the Common Interest Community Board."[2] Terrace View also adopted bylaws providing, inter alia, that it is the duty of its board of directors to "fix the amount of the annual assessment against each Lot that is part of the Property" and to "cause the Common Property to be maintained."

---

[1] "[W]e review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009).

[2] *See* Code § 55.1-1802 ("Unless control of the association has been transferred to the members, the developer shall register the association with the Common Interest Community Board within 30 days after recordation of the declaration and thereafter shall ensure that the report required pursuant to § 55.1-1835 and any required update has been filed.").

The Jannahs own and reside on a lot in the Subdivision.[3] In 2022, Terrace View imposed an "Association Fee" on the Jannahs' property. The Jannahs refused to pay the fee. Instead, the Jannahs filed for declaratory judgment in the circuit court, seeking a declaration that 1) Terrace View was not a valid POA under the POAA; 2) Terrace View had "no authority or legal right to assess, collect, enforce, or attempt to enforce the disputed fee, or any fee, against" them; and 3) Terrace View had "no authority or legal right to enforce against the Jannahs any restrictive covenant contained within the Declaration." In support, the Jannahs alleged that the Declaration "does not obligate [Terrace View] to establish, collect, or enforce the collection of an assessment fee," "does not obligate [Terrace View] to maintain any 'common area' property,"[4] and "does not obligate [Terrace View] to spend any of the assessment fees it collects to maintain a common area, nor does it specify how it may spend the assessments." The Jannahs also sought injunctive relief and attorney fees.

In its answer, Terrace View asserted the equitable defenses of waiver, estoppel, and unclean hands. The Jannahs moved to strike the equitable defenses on the grounds that 1) Terrace View "failed to allege any facts to support its equitable defenses," and 2) the defenses were equitable defenses "inapplicable to the underlying legal claim in dispute." The circuit court granted the motion to strike on the ground that the equitable defenses asserted by Terrace View were inapplicable to the underlying legal claim in dispute. The circuit court also granted Terrace View leave to amend their answer. The court did not rule on the Jannahs' first assertion that Terrace View had failed to allege any facts in support of the equitable defenses. Terrace View subsequently filed an amended answer asserting the same equitable defenses with facts in

_____

[3] The Jannahs, on brief, indicate that they own multiple lots in the Subdivision. It appears from the record that, as of January 1, 2022, the Jannahs owned three lots in the Subdivision.

[4] *See* Code § 55.1-1800 (defining "[c]ommon area").

- 3 -

support thereof, to wit, that the Jannahs had "previously paid the assessments," that Shekar had "served on the Board and enforced the assessments," and that "the Jannahs recently sold a lot subject to the Declaration."

The Jannahs then moved for summary judgment, asserting that based on their review, the Declaration failed to require Terrace View "to either maintain common area in the development or do anything for the property." In support of their motion for summary judgment, the Jannahs relied on a line of cases from our Supreme Court, beginning with *Anderson v. Lake Arrowhead Civic Association*, 253 Va. 264, 271-72 (1997), where the Court held that "to qualify under the POAA, an association must possess both the power to collect a fixed assessment or to make variable assessments and a corresponding duty to maintain the common area" and that such "conditions must be expressly stated in a recorded instrument in the land records of the jurisdiction where some portion of the development is located." The Jannahs further cited to *Dogwood Valley Citizens Association v. Winkleman* (*Dogwood I*), 267 Va. 7, 14 (2004), where the Court clarified that "[t]his duty must be *expressly* stated in the recorded documents and may not be inferred or implied," and *Dogwood Valley Citizens Association v. Shifflett* (*Dogwood II*), 275 Va. 197 (2008), where the Court clarified that "the responsibility for maintenance of common areas and roads must be 'imposed' on the association; voluntary assumption of this duty is insufficient," *id.* at 204 (quoting *Anderson*, 253 Va. at 272).

Terrace View opposed the Jannahs' motion for summary judgment on the following grounds. First, Terrace View insisted that a 2024 amendment to the POAA[5] rendered the Declaration valid, thus empowering Terrace View to levy the assessments at issue. Terrace

---

[5] *See* 2024 Va. Acts ch. 685. The amendment to Code § 59.1-1805 provided, "Nothing in this chapter shall be construed to prevent an association from levying or using assessments, charges, or fees to pay the association's contractual or other legal obligations in the exercise of the association's duties and responsibilities." *See id.*

View also supported its motion by alleging that: 1) the purpose of the Declaration was "to maintain 'the best use and most appropriate development and improvement of said property[,] and to preserve, so far as practicable, the natural beauty of said property'"; 2) Terrace View's bylaws required "the Board of Directors and the Association to 'cause the Common Property to be maintained'"; and 3) Terrace View "[wa]s contractually obligated to pay the electric bill for the illumination of the signage and landscaping at the entrance to the subdivision."  Thus, it contended, "pursuant to [Code §] 59.1-1805 of the POAA, the assessments made by [Terrace View] for the maintenance of the Common Property are for [Terrace View's] contractual or other legal obligations in the exercise of [its] duties and responsibilities."  Terrace View also contended in the alternative that the declaration of protective covenants was still enforceable as "a binding contract to which the Jannahs agreed when they purchased their lot."  Lastly, Terrace View asserted, again, that it should be allowed to raise its equitable defenses.

After hearing argument on the Jannahs' motion for summary judgment, the circuit court held that Terrace View "did not comply with the requirements of the [POAA]" and, therefore, was "invalid" and had "no authority to collect any fees" per the Supreme Court's holdings in *Dogwood I* and *Dogwood II*.  Then, by final order entered on November 8, 2024, the circuit court granted the motion for summary judgment.  In its final order, the circuit court declared that Terrace View 1) "is not a valid property owners association under the [POAA]"; 2) "has no authority or legal right to assess, collect, enforce, or attempt to enforce any fee against [the Jannahs], their real property, or do the same with respect to any other person or property"; and 3) "has no authority or legal right to enforce any restrictive covenant against [the Jannahs] or any other person or property."  The circuit court also ordered that Terrace View "is permanently enjoined from assessing, collecting, enforcing, or attempting to enforce any fee or enforcing or attempting to enforce a restrictive covenant."  Terrace View appealed.

## II. ANALYSIS

### A. *Standard of Review*

"In an appeal from a circuit court's decision to grant or deny summary judgment, this Court reviews the application of law to undisputed facts de novo." *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 27 (2019) (quoting *St. Joe Co. v. Norfolk Redevelopment & Hous. Auth.*, 283 Va. 403, 407 (2012)). "[S]ummary judgment shall not be entered unless no material fact is genuinely in dispute on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Oreze Healthcare LLC v. E. Shore Cmty. Servs. Bd.*, 302 Va. 225, 230 (2023) (alteration in original) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017)). "Therefore, when an appeal . . . arises from a 'decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review.'" *Id.* (quoting *La Bella Dona*, 294 Va. at 253). "A grant of summary judgment must be based upon undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admissions." *Corriveau v. State Farm Mut. Auto. Ins. Co.*, 298 Va. 273, 278 (2019) (quoting *Andrews v. Ring*, 266 Va. 311, 318 (2003)). "A factual issue is genuinely in dispute when reasonable factfinders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the reasonable inferences arising from those facts." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

"This appeal also presents questions of statutory interpretation," which we review de novo. *Huff v. Winston*, 292 Va. 426, 433 (2016); *Salunkhe v. Christopher Customs, LLC*, 78 Va. App. 312, 316 (2023). And "[i]nterpretation of a contract is a question of law that is

- 6 -

reviewed de novo." *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008).

B. *The circuit court did not err in granting summary judgment to the Jannahs.*

On appeal, Terrace View's assignments of error can be grouped into three general categories: 1) that the circuit court erred in concluding that it was not a POA under the POAA; 2) that even if it was not a POA, the circuit court erred in concluding that it could not enforce the assessments provided for in the Declaration; and 3) that the circuit court erred by not addressing its equitable defenses, which purportedly raised issues of material fact. We take each issue in turn.

1. Terrace View is not a POA under the POAA.

Based upon our Supreme Court's holdings in *Anderson*, *Dogwood I*, and *Dogwood II*, Terrace View is not a POA under the POAA. As defined in the POAA, a "property owners' association" is "an incorporated or unincorporated entity upon which responsibilities are imposed and to which authority is granted in the declaration." Code § 55.1-1800. A "declaration" is defined as "any [recorded] instrument" that either "imposes on the association maintenance or operational responsibilities for the common area," or "creates the authority in the association to impose . . . any mandatory payment of money in connection with the provision of maintenance or services for the benefit of some or all of the lots, the owners or occupants of the lots, or the common area." *Id.*

We need not engage in any novel statutory analysis to determine when an entity constitutes a POA, as the Supreme Court has already done so using these two definitions. Interpreting the statutory language defining "property owners' association" and "declaration" in *Dogwood I*, the Court reiterated its holding in *Anderson*:

> "[I]t is clear that in order to qualify under the [Property Owners' Association Act] an association must possess both the power to

collect a fixed assessment or to make variable assessments and a corresponding duty to maintain the common area. In addition, these conditions must be expressly stated in a recorded instrument in the land records of the jurisdiction where some portion of the development is located."

*Dogwood I*, 267 Va. at 13 (quoting *Anderson*, 253 Va. 271-72).[6] And in *Dogwood II*, the Court further clarified that "the responsibility for maintenance of common areas and roads must be 'imposed' on the association; voluntary assumption of this duty is insufficient." 275 Va. at 204 (quoting *Anderson*, 253 Va. at 272). Hence, "[a] duty 'imposed' on an organization for purposes of qualifying as a property owners' association under the POAA is one that cannot be altered or eliminated simply by amending the associations' bylaws." *See id.* The Court has since explained that

> In all three cases—*Anderson*, *Dogwood I*, and *Dogwood II*—our holding that Code § 55-509 requires a "property owners' association" to have *both* responsibility to maintain the common area *and* authority to impose assessments is based not on the Act's definition of "declaration," where the elements are disjunctive, but on its definition of "property owners' association," where the elements are conjunctive.

*Shepherd v. Conde*, 293 Va. 274, 282 (2017).[7]

Here, Terrace View's declaration gives it "the right to establish and collect assessments." But it does not impose "a corresponding duty to maintain the common area." *Dogwood I*, 267 Va. at 13 (quoting *Anderson*, 253 Va. at 272). While such a duty is set forth in Terrace View's bylaws, it is not "imposed" because the duty could be "altered or eliminated simply by amending

---

[6] It is worth noting that the Court reiterated its holding despite changes in the interim to the definition of "declaration" and "property owners' association." *See* 2003 Va. Acts ch. 422; 1998 Va. Acts ch. 623.

[7] Code § 55-509 was recodified as Code § 55.1-1800 in 2019. *See* 2019 Va. Acts ch. 712.

the associations' bylaws." *Dogwood II*, 275 Va. at 204. Hence, Terrace View is not a valid POA under the POAA.

We are not persuaded by Terrace View's argument that by amending Code § 55.1-1805, the General Assembly intended to supersede the Supreme Court's holdings in *Dogwood I* and *Dogwood II* by "relax[ing] the need for a declaration to expressly connect a duty with the right to collect assessments." The General Assembly amended Code § 55.1-1805 to say, "Nothing in this chapter shall be construed to prevent an association from levying or using assessments, charges, or fees to pay the association's contractual or other legal obligations in the exercise of the association's duties and responsibilities." *Id.*

Terrace View asserts that the broad language making the amendment applicable to "this chapter" means that it was intended to apply to the definitions of "association," "property owners' association," and "declaration." Indeed, at oral argument, Terrace View contended that this amendment established "a new standard of review" for determining whether an entity is an "association." But the amendment, as the Jannahs contend, contemplates the preexistence of an *association* and merely allows a duly formed POA to "levy[] or use[] assessments, charges, or fees to pay the association's contractual or other legal obligations in the exercise of the association's duties and responsibilities." And the purpose of the amendment becomes clear when we view its origin in temporal relation to a 2023 decision from this Court.

In *Burkholder v. Palisades Park Owners Association*, 76 Va. App. 577 (2023), this Court held that pre-amendment Code § 55.1-1805 precluded a POA from "imposing assessments for lot-compliance inspections" because such assessments were "not 'expressly authorized' by the declaration." *Id.* at 590 (quoting Code § 55.1-1805). There, the POA's declaration "empower[ed] [the POA's] board of directors '[t]o fix, levy, and collect assessments as provided in Article V'"; "[t]o employ, enter into contracts with, delegate authority to, and supervise such

- 9 -

persons or entities as may be appropriate to manage, conduct, and perform the business obligations and duties of the Association"; and, under Article V, to use "annual assessments . . . for '[t]he implementation, administration, and enforcement of th[e] Declaration, including, but not limited to, court costs and attorney fees.'" *Id.* at 588-89 (third, fourth, and sixth alterations in original). In *Burkholder*, there was no dispute over whether the POA at issue was a valid POA under the POAA; the dispute in that case was whether the assessments were "expressly authorized" by the declaration. *See id.* at 587 ("[T]he outcome here turns on whether an assessment for lot-compliance inspections is 'expressly authorized' by Palisades' declaration." (quoting Code § 55.1-1805)); *see also id.* at 592-93 (Athey, J., dissenting) (disagreeing with the Majority's construction of the word "expressly").

Because the plain language of the amendment to Code § 55.1-1805 addresses the situation that arose in *Burkholder*—where a valid POA exists and attempts to levy or use assessments for its contractual or legal obligations while exercising its duties and responsibilities—we reject Terrace View's argument that the amendment overruled *Dogwood I* and *Dogwood II*. Moreover, we note that this amendment did not change any language in the definitions section (Code § 55.1-1800), and we do not accept Terrace View's argument that a change outside the definitions section effectively amended the definitions of "[d]eclaration," "[a]ssociation," or "[p]roperty owners' association." *See Harrison v. Wissler*, 98 Va. 597, 600 (1900) (observing that "[t]he rule of construction, when there has been a [statutory] revision, is that the old law was not intended to be altered, unless such intention plainly appears in the new Code" provision). As such, this amendment did not vitiate the requirement that, to be a valid POA under the POAA, the corresponding declaration must impose "a corresponding duty to maintain the common area." *Dogwood I*, 267 Va. at 13 (using the definitions in Code § 55.1-1800 to establish this requirement).

Therefore, Terrace View is not a "property owners' association" within the meaning of the POAA.[8]  Code § 55.1-1800.

2.  Terrace View has no contractual right to make the assessments at issue.

In the alternative, Terrace View argues that even if it is not a valid POA, the circuit court "erred in ruling that Terrace View could not levy assessments or enforce any other covenants against the owners" as a matter of contract.  Based on the language of the Declaration, we disagree.

The POAA grants only POAs the power to levy assessments beyond those "authorized in the declaration."  *See* Code § 55.1-1825(A).  But an entity that is not a POA may still levy assessments that are provided in a covenant contained within their declaration.  *See Anderson*, 253 Va. at 267, 272-73; *cf. Sully Station II Cmty. Ass'n v. Dye*, 259 Va. 282, 284 (2000) (endorsing that association declarations are contracts that can be enforceable).

Our Supreme Court endorsed this in *Anderson*, holding that a purported POA failed to qualify as a POA under the POAA but nonetheless could collect assessments.  253 Va. at 272-73. In *Anderson*, the relevant declaration established a covenant that obligated "each purchaser of a lot within the subdivision to pay [the developer] or his assignee annually $20 for the first lot owned and $10 for each additional lot owned 'to be used for general maintenance.'"  *Id.* at 267. The Court reasoned that "[a]bsent qualification under the POAA, [the purported POA's] right to impose an assessment on the property owners . . . ar[o]se[] only from" the covenant.  *Id.* at

---

[8] Lastly, Terrace View cites to the definition of "declaration" and contends that "a declaration also may be valid where it satisfies the second disjunct—i.e., where it couples the right to collect assessments with the provision of 'maintenance or services' for the benefit of the lots owned by the members."  But we cannot address this argument because it was not made below to the circuit court.  *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

272-73. Thus, while the Court held that the purported POA could not make assessments in excess of those allowed pursuant to the covenant, the Court held that it could still levy the assessments specifically enumerated in the covenant "provided that it expend[ed] those fees for no other purpose than general maintenance." *Id.*

Terrace View likens itself to the purported POA in *Anderson*. But there is a clear difference between the covenant at issue in *Anderson* and the Declaration at issue here—the covenant in *Anderson* provided for a fixed and definite fee designated for a specific purpose, whereas the Declaration here provides no such definiteness. Instead, the Declaration merely provides that Terrace View, if established, "shall have the right to establish and collect assessments, and by accepting ownership in the subdivision each Lot owner(s) shall be deemed to have agreed to pay same when and as due." The Jannahs argue that this provision for assessments is a material term that is "inexact, indefinite, or incomplete" and therefore insufficient to establish a contractual duty or obligation on the part of lot owners in the Subdivision.[9] We agree.

"In order to be binding, an agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto." *Dodge v. Trs. of Randolph-Macon Woman's Coll.*, 276 Va. 1, 5 (2008) (quoting *Progressive Constr. Co. v. Thumm*, 209 Va. 24, 30-31 (1968)). "A contract must be sufficiently definite to enable a court to give the contract an exact meaning, and the contract must obligate the contracting parties to matters that are definitely ascertained or ascertainable." *Id.* at 5-6. Consequently, "[a] contract is not valid and it is unenforceable if the

---

[9] Although the Jannahs did not raise this argument to the circuit court, it is "a purely legal ground," which may be asserted for the first time on appeal by an appellee. *Collins v. Commonwealth*, 297 Va. 207, 212 n.1 (2019); *see also Wood v. Martin*, 299 Va. 238, 244 n.1 (2020) ("While our legal analysis differs from the circuit court's, we may affirm the judgment on different grounds than those relied upon by the circuit court.").

- 12 -

terms of the contract are not established with reasonable certainty." *Id.* at 6. However, "[t]he law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency." *Jimenez v. Corr*, 288 Va. 395, 415 (2014) (quoting *Reid v. Boyle*, 259 Va. 356, 367 (2000)). So "[w]e do not 'permit parties to be released from the obligations which they have assumed if [a contract's meaning] can be ascertained with reasonable certainty from language used, in light of all the surrounding circumstances.'" *Id.* (quoting *Reid*, 259 Va. at 367). To determine whether the terms of a contract are stated with sufficient definiteness, we review the contract "as a whole." *Id.* (quoting *Schuiling v. Harris*, 286 Va. 187, 193 (2013)). As our Supreme Court has not expressly weighed in on the requirements for definiteness in the context of a restrictive covenant authorizing the levying of assessments, we look to other jurisdictions for guidance. *See Dickson v. Dickson*, 23 Va. App. 73, 82 (1996).

The Court of Appeals of North Carolina, similarly faced with a dearth of authority on the instant subject, has distilled a standard for determining whether an assessment provided for in a covenant is sufficiently definite. *Beech Mountain Prop. Owners' Ass'n v. Seifart*, 269 S.E.2d 178, 183 (N.C. Ct. App. 1980). In *Beech Mountain*, the court stated that "courts of other states . . . have stressed the necessity for some ascribable standard contained in the covenant" to

determine: 1) "the amount of the assessment"; and 2) "the purpose for which it is levied."[10]  *Id.* The court reasoned that "[o]bviously, a covenant which purports to bind the grantee of land to pay future assessments in whatever amount to be used for whatever purpose the assessing entity might from time to time deem desirable would fail to provide the court with a sufficient standard."  *Id.*  Courts may look beyond the covenant to objectively determine the assessment amount, but it must have a textual anchor within the covenant guiding its review when venturing beyond the four-corners of the document.  *See Willow Bend Homeowners Ass'n v. Robinson*, 665 S.E.2d 570, 576 (N.C. Ct. App. 2008).

The Court of Appeals of North Carolina adhered to these principles in *Robinson*.  There, the covenant provided that a homeowners' association could levy assessments "to promote the . . . welfare of . . . residents."  *Id.* at 572.  The association subsequently levied assessments to fund attorney fees arising from litigation by its own members.  *Id.* at 572-73.  The court found the covenant sufficiently definite.  *Id.* at 576.  First, the court "determine[d] whether the purpose of the assessment falls within the contemplation of the covenant" and held that it did because several North Carolina statutes, in addition to caselaw, required homeowner associations to

---

[10] As noted in *Beech Mountain*, other jurisdictions have endorsed these principles.  *See Dye v. Diamante*, 510 S.W.3d 759, 764 (Ark. 2017) (holding that collecting assessments for the "use, enjoyment, and maintenance of the club" was not indefinite because that limitation "prevent[s] [a private golf club] from collecting dues completely unrelated to that specific purpose"); *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 625 (Utah 1989) ("The promise to pay money is necessarily dependent on the purpose of the payment and thus should not stand alone." (quoting Margot Rau, Note, *Covenants Running with the Land: Viable Doctrine or Common-Law Relic?*, 7 Hofstra L. Rev. 139, 164 (1978))); *Petersen v. Beekmere, Inc.*, 283 A.2d 911, 922-23 (N.J. 1971) (holding that a covenant was unenforceable because of "ambiguities," including there being "no requirement that the assessment money . . . be spent on the land from which the funds were received" or "for the development of [the subdivision]"); *Rodruck v. San Point Maint. Comm'n*, 295 P.W.2d 714, 722 (Wash. 1956) (holding that a covenant was not indefinite because "[t]he covenant . . . clearly state[d] the purposes for which the funds realized through assessments [we]re to be collected and spent"); *Nassau County v. Kensington Ass'n*, 21 N.Y.S.2d 208, 215 (N.Y. 1940) (holding that a covenant was "doomed" because "[the POA] [wa]s not committed by its terms to use the funds collected for any particular purpose or in fact to spend the money at all").

obtain legal representation in such disputes. *Id.* 575-76. The court also emphasized that homeowners "could have foreseen that if [the association] ever incurred legal fees in its own defense, it would levy a reasonable assessment to pay these fees" pursuant to that provision. *Id.* at 576. The court in *Robinson* then asked if "there [was] an ascertainable standard by which [the] [c]ourt can objectively determine that the amount of the assessment [that] fell within the contemplation of the covenant" and held that there was. *Id.* The court, guided by the assessment's purpose, looked beyond the text of the covenant, stating that there was an objective standard upon which it could rely: "the amount of the assessment contemplated by the covenant at issue was the cost incurred by [the association] in securing legal representation." *Id.* Accordingly, the court concluded that the covenant was not indefinite. *Id.*

Applying these principles to the Declaration at issue here, we hold that the contractual provision purporting to authorize Terrace View to levy assessments and require lot owners to dutifully pay such assessments is not sufficiently definite so as to ascertain the obligations of the lot owners with reasonable certainty. *See Dodge*, 276 Va. at 6. The Declaration states that Terrace View "shall have the right to establish and collect assessments." This language, unlike the declaration in *Robinson*, does not shed light on where, and how, assessment revenue will be funneled to purportedly fulfill those obligations. And while the Declaration purportedly authorized Terrace View with assessment-levying power, "[Terrace View] is not committed by its terms to use the funds collected for any particular purpose or in fact to spend the money at all." *Nassau County v. Kensington Ass'n*, 21 N.Y.S.2d 208, 215 (N.Y. 1940). In this way, the Declaration is akin to "a covenant which purports to bind the grantee of land to pay future assessments in whatever amount to be used for whatever purpose the assessing entity might from time to time deem desirable." *Beech Mountain*, 269 S.E.2d at 183.

Put simply, declaring that someone "shall have the right" to do something does little to inform contracting parties *how* they will exercise that right.[11]  As a result, we cannot conclude whether the purpose of Terrace View's assessments "f[a]ll within the contemplation of the covenant." *Robinson*, 665 S.E.2d at 576.  This is fatal because "[a] contract must be sufficiently definite to enable a court to give the contract an exact meaning." *Dodge*, 276 Va. at 5-6; *cf. Anderson*, 253 Va. at 272.  *Contrast Beech Mountain*, 269 S.E.2d at 183 (holding that "reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas" did not sufficiently guide a court in how assessments would be spent), *with Figure Eight Beach Homeowners' Ass'n. v. Parker*, 303 S.E.2d 336, 342 (N.C. Ct. App. 1983) (holding that a paragraph delineating specific uses for assessment revenues was sufficient to guide courts in reviewing how assessment revenue would be spent).

The Declaration also falls short of establishing an "ascribable standard" to "determine . . . the amount of the assessment." *Beech Mountain*, 269 S.E.2d at 183.  Unlike the declaration in *Anderson*, the Declaration here does not have a fixed fee clearly stated in its terms.  *See Anderson*, 253 Va. at 267.  And unlike the declaration in *Robinson*, the Declaration here does not provide a purpose for assessments that can guide a court in reverse-engineering an assessment amount for certain activities.  *See Robinson*, 665 S.E.2d at 576.  Finally, while the bylaws establish a process by which Terrace View's board of directors may levy assessments, the

---

[11] Terrace View asserts that the purpose of the assessments was to fulfill "contractual or other legal obligations in the exercise of [its] duties and responsibilities," alluding to a responsibility to make the subdivision look uniform and upkept.  But there is nothing in the Declaration connecting Terrace View's power to levy assessments with their responsibilities to keep the subdivision uniform.  Even our Supreme Court, in *Anderson*, has endorsed that a declaration must bear *some* specificity on the purpose of an assessment to make such contractual provisions enforceable.  *See Anderson*, 253 Va. at 267, 272-73 (holding that a POA, whose declaration permitted assessments of specific amounts "for general maintenance," could levy assessments "provided that it expend[ed] those fees *for no other purpose than general maintenance*" (emphasis added)).  So Terrace View's assertion is unavailing.

- 16 -

relevant document—the Declaration—does not prescribe a process by which *the amounts* are established. Rather, the Declaration simply states that Terrace View "shall have the right to establish and collect assessments," which is a far cry from there being an "ascertainable standard contained *in the covenant*" to "determine . . . the amount of the assessment." *Beech Mountain*, 269 S.E.2d at 183 (emphasis added). Hence, the Declaration fails to satisfy this requirement, too.

Thus, a reasonable purchaser of a lot subject to the covenants contained in the Declaration could not readily ascertain, from the text of the Declaration—viewed in toto—how the corresponding revenue would be spent. *See Beech Mountain*, 269 S.E.2d at 183. Nor could a reviewing court. Therefore, we hold that the contractual provision authorizing the levying of assessments is invalid and unenforceable because it is too indefinite. *See Dodge*, 276 Va. at 6.

3. <u>The circuit court did not err in failing to rule on Terrace View's equitable defenses.</u>

Lastly, Terrace View asserts that the circuit court erred by failing to address its equitable defenses before entering summary judgment in favor of the Jannahs. Assuming without deciding that equitable defenses would have been cognizable in the proceedings below,[12] we disagree.

In its amended answer, Terrace View asserted that the equitable defense of unclean hands barred the Jannahs' claims because the Jannahs had "previously paid the assessments," Shekar had "served on the Board and enforced the assessments, and the Jannahs recently sold a lot

---

[12] Assuming without deciding presents the best and narrowest grounds for resolution. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018). A declaratory judgment action may proceed on the equity or law side of the court. *See Carr v. Union Church of Hopewell*, 186 Va. 411, 418 (1947). The Jannahs insist that because the underlying nature of the action was an action at law, equitable defenses are categorically inapplicable. Terrace View, on the other hand, asserts that declaratory judgment is an "equitable remedy." Complicating matters, the circuit court issued not only declaratory relief but injunctive relief as well. *See Norfolk S. Ry. Co. v. E. A. Breeden, Inc.*, 287 Va. 456, 467 (2014) ("[W]hen a party seeks injunctive relief, he must sue in equity." (quoting *Wright v. Castles*, 232 Va. 218, 222 (1986))). Hence, the best and narrowest ground is not for this Court to opine on whether equitable defenses are cognizable in a declaratory judgment action such as the one at bar.

subject to the Declaration."[13] Terrace View specifically contends that because the defense "raised [a] genuine issue of material fact, the [t]rial [c]ourt erred in not addressing" it. But this is wrong; while Terrace View perhaps demarcates issues of fact, such facts are not material to the underlying legal dispute.

The equitable defense of unclean hands applies to bar a plaintiff from entering a court of equity when he is "guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *Cline v. Berg*, 273 Va. 142, 147 (2007). "Application of the doctrine turns upon the facts of each particular case and is therefore left to the sound discretion of the fact finder." *Id.* at 148. An affirmative defense may create "a genuine dispute of material facts that preclude[s] the entry of a summary judgment order." *Neal v. Sec'y of the Dep't of Veterans Affairs*, 79 Va. App. 1, 9 (2023). But, where the facts alleged in support of the defense are immaterial, summary judgment may still be appropriate. *See AlBritton*, 299 Va. at 403 ("[I]mmaterial facts genuinely in dispute . . . do not preclude the entry of summary judgment."). "A fact is material to a party's position only if it can affect the outcome of the case." *Brizzolara v. Sherwood Mem'l Park, Inc.*, 274 Va. 164, 188 (2007).

Here, even if the Jannahs had "previously paid the assessments," Shekar had "served on the Board and enforced the assessments, and the Jannahs recently sold a lot subject to the Declaration," these facts are immaterial to the substantive issues decided by the circuit court

---

[13] Terrace View actually raised three equitable defenses at the circuit court: waiver, estoppel, and unclean hands. But on brief, Terrace View fails to develop any argument that the Jannahs' conduct satisfied the elements of waiver or estoppel other than the assertion that "[i]f established at trial, [the Jannahs'] inequitable conduct amounts to a waiver of their claims, estopping them from the declaratory relief they now seek." Nor does Terrace View cite to any authority for this proposition. *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017). Hence, it is waived. *See id.*; Rule 5A:20(e). Accordingly, we only review the equitable defense of unclean hands. *See Bartley*, 67 Va. App. at 746.

when it granted the motion for summary judgment to the extent challenged on appeal.[14] The Jannahs' actions, as alleged, could have no effect on the legal conclusions reached by the circuit court regarding whether Terrace View could levy assessments against the Jannahs, either by virtue of its purported status as a POA or by purported contractual rights flowing from the Declaration. Put differently, viewed in the light most favorable to Terrace View, *Fultz*, 278 Va. at 88, the facts in the record before the circuit court having any tendency to support the asserted defense of unclean hands are irrelevant to 1) whether Terrace View is a POA under the POAA and 2) whether the Declaration contains an enforceable contractual provision authorizing the levying of the assessments at issue. *See Brizzolara*, 274 Va. at 188. Hence, we must conclude that the circuit court did not err when it declined to address Terrace View's equitable defenses before granting summary judgment.

### III. CONCLUSION

The circuit court did not err in granting the Jannahs' motion for summary judgment. Finding no error, we affirm the judgment of the circuit court.

*Affirmed.*

---

[14] In addition to granting declaratory relief, the circuit court also granted injunctive relief, which is equitable relief. *See Norfolk S. Ry. Co.*, 287 Va. at 467. On brief, Terrace View only asserts that the defense of unclean hands barred entry of summary judgment on the *declaratory* relief sought by the Jannahs. It does not argue that the facts alleged in support of its defense of unclean hands are material to the issue of whether injunctive relief was appropriate. Hence, we find the argument waived and do not address it. *See* Rule 5A:20(e).